**UNITED STATES of America,**
**Appellant,**

v.

**ADKINS-PHELPS, INCORPORATED,**
**Appellee.**

**No. 18944.**

United States Court of Appeals
Eighth Circuit.

Sept. 30, 1968.

Stuart A. Smith, Atty., Dept. of Justice, Washington, D. C., for appellant; Mitchell Rogovin, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., and W. H. McClellan, U. S. Atty., Little Rock, Ark. on the brief.

William H. Bowen and Byron M. Eiseman, Jr., of Smith, Williams, Friday & Bowen, Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT, Chief Judge, HEANEY, Circuit Judge, and REGISTER, Chief District Judge.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal from final judgment of the District Court awarding Adkins-Phelps, Incorporated (taxpayer), $40,689.38 and interest as a refund of income tax of taxpayer for the fiscal year ending September 30, 1961, alleged to have been unlawfully assessed and collected. Adkins-Phelps, Incorporated, an Arkansas corporation, acquired the assets of J. F. Weinmann Milling Company (Weinmann), also an Arkansas corporation, through corporate reorganization procedures effected on November 11, 1959, which were admittedly in conformity with Arkansas law.

On the date of the reorganization, Weinmann had an unused net operating loss of $602,420.34. Taxpayer in its income tax return for the fiscal year ending September 30, 1961, absorbed its $88,825.73 income completely by offsetting pre-merger losses of Weinmann. The Commissioner disallowed the loss deduction, which resulted in the deficiency assessment of $40,689.38 here in-

volved. The taxpayer, after paying such assessment, filed timely claim for refund which was disallowed, whereupon this action was commenced. Jurisdiction is established.

This case was tried before a jury. The only verdict returned by the jury was a response to a special interrogatory which was answered by the jury as follows: "That the plaintiff did not effect a merger with J. F. Weinmann Milling Company for the principal purpose of tax avoidance." Instructions given the jury and exceptions thereto, if any, are not set out in the printed record. It would appear that the question answered by the special interrogatory was the only issue submitted to and determined by the jury. Nothing in the record or briefs indicates any objection was made to such a limited submission. Upon the basis of the special verdict, the court on December 22, 1966, entered judgment for the taxpayer for the amount of the refund claimed.

Thereafter on December 28, 1966, the Government filed a motion for judgment n. o. v. upon the following grounds:

"1. The evidence shows as a matter of law that the acquisition of J. F. Weinmann Milling Company assets by the plaintiff was not a transfer to which Section 361 of the Internal Revenue Code of 1954 applies, because the transfer was not in connection with a reorganization of the type enumerated in Section 381(a) (2) of the Internal Revenue Code of 1954. As a consequence, the plaintiff is not entitled to succeed to and take into account the net operating losses of J. F. Weinmann Milling Company;

"2. The receivership proceedings so changed the J. F. Weinmann Milling Company insofar as its capital structure, debt structure, and equity ownership were concerned that neither it nor

a successor by statutory merger could thereafter utilize pre-receivership net operating losses as a basis for a post-receivership net operating loss deduction; and

"3. The evidence is such that reasonable men could only find and conclude that the principal purpose for which the property of J. F. Weinmann Milling Company was acquired by the plaintiff was the avoidance of Federal income tax by securing the benefit of a deduction which the plaintiff would not otherwise enjoy."

The trial court on February 23, 1967, denied such motion in its entirety, setting forth its reasons therefor in an accompanying memorandum opinion. This appeal is from the judgment entered and from the order denying the motion for judgment n. o. v.

The third ground of the motion, which relates to the sufficiency of the evidence to support the jury finding that the merger was not for the principal purpose of tax avoidance, has been abandoned by the Government in this appeal and is not before us.[1] Thus the finding of the jury that the principal purpose of the merger was not tax avoidance stands.

The Government upon this appeal asserts it is entitled to a reversal for the following reasons:

1. No corporate reorganization within the meaning of § 368(a) (1) (A), I.R.C. 1954, (26 U.S.C.A. § 368(a) (1) (A)[2] exists because the continuity of interest requirement was not met.

(a) The Adkins-Phelps stock acacquired by Mrs. Weinmann pursuant to the merger agreement did not represent a substantial proprietary interest.

(b) Insolvency of Weinmann completely wiped out all stockholders' equity in that corporation.

---

[1.] The Government, in its brief, states: "One of the grounds of the Government's Motion for Judgment Notwithstanding the Verdict was that the jury verdict with respect to tax-avoidance motive was unreasonable in the light of the evidence. We do not renew that contention here."

[2.] Citations herein unless otherwise indicated are to the Internal Revenue Code of 1954 as amended, 26 U.S.C.A. § 1 et seq.

2. No § 368(a) (1) (A) reorganization exists because the continuity of business enterprise requirement was not met.

Section 381 provides that in the case of precisely defined types of corporate acquisition certain tax items of a transferor corporation as of the date of the transfer shall be taken into account by the acquiring corporation for income tax purposes. Among such items is the net operating loss carry-over, subject to the conditions imposed by § 381(c) (1).[3]

In order for a corporate acquisition to qualify for survival of loss carry-overs to the succeeding corporation, it must be one of the tax-free types set out in § 381(a). Included in the qualifying category is a transfer to which § 361 applies "but only if the transfer is in connection with the reorganization described in subparagraph (A) * * * of section 368(a) (1)." Section 368(a) (1) (A), primarily relied upon by taxpayer, includes in the definition of reorganization, "(A) a statutory merger or consolidation." [4]

■ The Government does not contend that the Arkansas laws governing merger or consolidation have not been complied with. The parties agree that the compliance with state merger or consolidation statutes standing alone is not sufficient to satisfy the requirements of § 368(a) (1) (A). In addition, under the judicial gloss put upon the statute by the courts in light of the legislative history and purpose, a showing of continuity of interest is required. Such requirement is summarized in Southwest Natural Gas Co. v. Commissioner, 5 Cir., 189 F.2d 332, 334, as follows:

"(1) that the transferor corporation or its shareholders retained a substantial proprietary stake in the enterprise represented by a material interest in the affairs of the transferee corpora-

tion, and (2) that such retained interest represents a substantial part of the value of the property transferred."

See LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355; Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284; John A. Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937; Treasury Regulations § 1.368–1(b); Mertens Law of Federal Income Taxation § 20.59.

■ The trial court, as a basis for its determination that the continuity of interest requirement has been met, states:

"The plan of reorganization called for an exchange of stock on a share-for-share basis between Adkins-Phelps and the stockholders of Weinmann.

The result of this exchange was that Mrs. Weinmann, who held 99% of the Weinmann stock, owned approximately one-sixth of the outstanding stock of Adkins-Phelps. In addition to being the principal shareholder, Mrs. Weinmann was also one of the largest creditors of Weinmann. We think, however, that it is immaterial whether Mrs. Weinmann occupied her position as an equity owner of Weinmann in her capacity as principal shareholder or as a creditor. The fact that she maintained a substantial equity interest in Adkins-Phelps subsequent to the merger we consider to be sufficient to meet the continuity of interest requirement, and we so hold."

Such finding and holding is supported by substantial evidence and is not clearly erroneous.

The Government does not seriously contend that a one-sixth stock interest

3. Net operating loss deductions are provided for in § 172.

4. Taxpayer in oral argument urged that the transaction could be viewed as a §

368(a) (1) (C) merger. We need not consider such contention as we find § 368 (a) (1) (A) applies.

would not be sufficient to establish continuity of interest. Principal reliance is placed upon a portion of the merger agreement reciting that the par value of Adkins-Phelps stock is $1.00 per share and the provision granting a stock option, which reads: "that for and as part of the consideration of the merger that the stockholders of the consolidated corporation, continuing under the name of Adkins-Phelps, Inc., bind themselves and agree that each stockholder will not transfer his, her or its capital stock in the Adkins-Phelps, Inc., corporation without first offering said stock to Adkins-Phelps, Inc., for par value."

The Government contends that by reason of the foregoing agreement all attributes of stock ownership are absent in the 997 shares of stock acquired by Mrs. Weinmann in the merger and that Mrs. Weinmann's stock interest could never be worth more than its $997 aggregate par value.

■ Such argument lacks validity for the reasons hereinafter set out:

1. Mrs. Weinmann, except for the sale restriction if valid, possessed all rights of a stockholder, including the right to vote the stock, the right to receive distribution of profits realized in the form of cash or stock dividends, preemptive rights to a proportionate share of any new stock issued, and a right to pledge the stock as security. Such rights are substantial attributes of stock ownership.

■ 2. The agreement placed Mrs. Weinmann under no obligation to sell the stock to the other shareholders. She had a complete right to continue to hold the stock. The Government contends that by reason of her age of 82 years, with a life expectancy of about 4 years, that Mrs. Weinmann or her heirs would soon have to sell all the stock for $997 under the agreement. The agreement does not fix a time period nor does it by its terms bind Mrs. Weinmann, her heirs or assigns, to sell the stock to any one at any time. Restrictions of this type are strictly construed and it is very doubtful

whether the duty to sell would be binding upon Mrs. Weinmann's estate. See Globe Slicing Machine Co. v. Hasner, 2 Cir., 333 F.2d 413; Elson v. Security State Bank of Allerton, 246 Iowa 601, 67 N.W. 2d 525; 18 C.J.S. Corporations § 391.

■ The fact that Mrs. Weinmann improvidently, at her insistence and against contrary advice, sold her stock to Adkins-Phelps for $997 is not material to the issue here. The determination of the substantiality of the stock interest must be upon the basis of the situation existing at the time of the merger.

3. The purchase option agreement applied alike to all then existing stockholders and thus Mrs. Weinmann acquired the same purchase option with respect to other stockholders as she had given to them.

4. The fact that Arkansas by Article 2, Section 19 of its Constitution prohibits perpetuities, and the fact that the merger agreement option contains no time limitation and no provision for making it applicable to heirs or assigns, tend to support the view that the option right would expire upon the death of the grantor or the grantee of the option and would not pass to the heirs. See Roemhild v. Jones, 8 Cir., 239 F.2d 492, 495–497.

The Government makes the additional contention that Weinmann was insolvent prior to the merger and hence Mrs. Weinmann as a stockholder in that company had nothing to transfer to Adkins-Phelps in exchange for its stock. The value of the stock interest must be judged by the situation existing at the time of the merger. As of such time, the evidence does not compel a finding of insolvency of Weinmann in a bankruptcy sense. No adjudication of insolvency was ever made. The debts of Weinmann prior to the merger had been substantially reduced. $87,000 received as proceeds of a life insurance policy of a company officer was applied upon the bonded indebtedness. Mrs. Weinmann agreed that $89,000 of the indebtedness she claimed to be due her from the corporation could

be treated as a contribution to capital. Concessions were made by the bondholders. It is established that Weinmann's real estate holdings were worth far more than the value attributed to the real estate by the company books.

■ The equity interest in a corporation remains in the shareholders until the creditors, by appropriate action, cut off such equity interest. See Palm Springs Holding Corp. v. Commissioner, 315 U.S. 185, 188–192, 62 S.Ct. 544, 86 L.Ed. 785; Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 183–184, 62 S.Ct. 540, 86 L.Ed. 775; Seiberling Rubber Co. v. Commissioner, 6 Cir., 169 F.2d 595, 601; Atlas Oil & Refining Corp. v. Commissioner, 36 T.C. 675, 688.

No appropriate action has here been taken to divest the stock equity interest. The claims of all creditors have been adjusted and satisfied. An equity stock interest in the Weinmann stock has been established in Mrs. Weinmann and such interest which was exchanged for stock in Adkins-Phelps establishes the required continuity of interest.

■ In any event, Mrs. Weinmann was a substantial creditor of the corporation. The claims of other substantial creditors were satisfied. Thus it would seem to make little difference whether Mrs. Weinmann received her stock in Adkins-Phelps, Inc., as a stockholder or a creditor of the old corporation. See Seiberling Rubber Co. v. Commissioner, 6 Cir., 169 F.2d 595, 601; Norman Scott, Inc. v. Commissioner, 48 T.C. 598, 604.

Lastly, the Government urges that the continuity of business requirement has not been met. Such contention was properly rejected by the trial court. Upon this issue, the trial court states:

"Defendant approaches this issue in two ways. It first contends that under the rule of Libson Shops, Inc. v. Koehler, 353 U.S. 382 [77 S.Ct. 990, 1 L.Ed.2d 924] (1957), Adkins-Phelps may not deduct pre-merger losses incurred by Weinmann. Plaintiff contends, on the other hand, that Libson Shops case was decided under the 1939 Code, prior to the enactment of Sections 381 and 382 of the 1954 Code, and that the Libson Shops doctrine was superseded by the enactment of these sections. In support of this contention plaintiff cites the case of Maxwell Hardware Co. v. Commissioner, 343 F.2d 713 (9 Cir. 1965). This case held that by enacting Sections 381 and 382, Congress intended to substitute statutory rules for court-made law and the precedential value of the Libson Shops decision has been destroyed.

"We find the Maxwell Hardware case very persuasive in its argument and sound in its result. It seems clear to us that Sections 381 and 382 were designed to provide definite limitations upon the use to which operating loss carryovers may be put. Section 381 provides that a successor or transferee corporation may step into the 'tax shoes' of a transferor corporation, under certain circumstances, and take into account, among other things, the transferor's net operating loss carryovers. Section 382 sets out specific limitations on the right to take a net operating loss deduction where there has been a change in ownership of the corporate stock and a change in the corporation's trade or business.

"In connection with these new sections, and in light of the rationale of the Maxwell Hardware case, we cannot say that the Libson Shops case is still the law and that its requirements must be met before a net operating loss carryover may be taken."

■ It would appear from the trial court's opinion that the Government relied upon Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924. Maxwell Hardware Co. v. Commissioner, 9 Cir., 343 F.2d 713, relied upon by the trial court, clearly points out that Libson Shops arose under I.R.C.1939 and that substantial changes were made by the Internal Revenue Code of 1954. As stated in Maxwell, the legislative history demonstrates that "it was the clearly expressed intention of Congress to attempt to bring some order out of chaos, and,

in effect, to countenance 'trafficking' in operating loss carryovers except as affected by the special limitations of Section 382 and the general limitations of Section 381." 343 F.2d 713, 718.

■ Revenue Ruling 63–29 discloses that the surviving corporation must engage in a business enterprise to qualify for the loss deduction but also makes clear that the surviving corporation "need not continue the activities conducted by its predecessor." All that is required in this respect is that the survivor continue to carry on some business activity. See Frederick Steel Co. v. Commissioner, 6 Cir., 375 F.2d 351, 354; Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders, § 12.19; Mertens Law of Federal Income Taxation § 20.54.

■ The Government, citing Pridemark, Inc. v. Commissioner, 4 Cir., 345 F.2d 35, urges that temporary cessation of business activities constitutes a break in the continuity of business requirement. *Pridemark* is readily distinguishable from our present case. In that case, all substantial assets including sales contracts and customer lists were sold to Golden Key and Golden Key was allowed to hire its personnel. The court found that there had been a complete liquidation of the corporation and that its business of *selling* prefabricated homes had been abandoned. In our present case, the temporary lull in business was caused by financial distress. Weinmann did not sell out substantially all the assets involved in its business operations. The business was resumed before the merger and as heretofore stated, the jury found the merger was not effected primarily for the purpose of tax avoidance. Weinmann's business had been very successful prior to Mr. Weinmann's death and its brand name products had wide acceptance in the West Memphis area where taxpayer operated. Under the facts presented by the record, we do not believe that the temporary suspension of taxpayer's business activities requires a de-

termination that the continuity of business requirement has not been met. The trial court did not err in determining as a fact issue that the continuity of business requirement had been satisfied. Compare Clarksdale Rubber Co. v. Commissioner, 45 T.C. 234, 246; H. F. Ramsey Co. v. Commissioner, 43 T.C. 500, 512–516.

The judgment of the District Court is affirmed.