**WORTHAM MACHINERY COMPANY, a Wyoming corporation, et al., Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. No. 5855.**

United States District Court, D. Wyoming.

May 10, 1974.

Carl L. Lathrop of Lathrop, Uchner & Mullikin, Cheyenne, Wyo., for plaintiffs.

Michael David Howard, Atty., Tax Div., Dept. of Justice, Washington, D. C., and Richard V. Thomas, U. S. Dist. Atty., Cheyenne, Wyo., for defendant.

### JUDGE'S MEMORANDUM

KERR, Judge.

Wortham Machinery Company (Wortham) and other plaintiffs have filed this suit seeking refunds of income taxes assessed and paid. This action was instituted pursuant to 28 U.S.C. §§ 1340, 1346(a)(1) and 1402. The matter was tried to the Court without a jury.

This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1), which permits a civil action to be brought for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected.

Wortham is a corporation organized and existing under the laws of the State of Wyoming, with its principal place of business in Wyoming. The co-plaintiffs, James W. Norris and Jeanette C. Norris, are shareholders in Wortham. Thomas J. Carroll is Executor of the estate of William A. Norris, Jr., a deceased shareholder. Wortham is a closely-held corporation owned and operated by the Norris family. As of June 30, 1966, the total stock issued was 20,626 shares, the plaintiffs holding the following amounts:

|  | Shares | Percent of Total outstanding |
| --- | --- | --- |
| James W. Norris | 6,672½ | 32.34 |
| William A. Norris, Jr. | 6,392½ | 30.99 |
| Jeanette C. Norris | 340 | 1.65 |

The balance of the shares was owned by various members of the Norris family, who are not parties to this action. Wortham was in the business of selling new and used machinery, primarily construction equipment such as caterpillars. Its principal supplier was Caterpillar Tractor Company, a well known national manufacturer and wholesaler. Wortham had been engaged in such business since its incorporation in July 1930. William A. Norris, Jr., and James W. Norris were also officers and directors of Wortham at times pertinent herein.

On July 11, 1966, Madera Manufacturing Company of California (Madera) was incorporated in the State of California. It was authorized to issue 20,000 shares of stock and of this total, 3,000 shares were issued in the following amounts:

|  | Shares |
| --- | --- |
| William A. Norris, Jr. | 1,530 |
| W. S. Jackson | 1,170 |
| Kenneth B. Goltz | 300. |

Madera was formed and established to manufacture and sell hydraulic ditchers and fork-lift attachments. Madera was set up as a separate entity for several reasons, by William A. Norris. Among these reasons were that Caterpillar Tractor Company was opposed to its dealers engaging in other enterprises; that the two businesses, that of manufacturing and retailing were incompatible because of cost factors and personnel problems; and further, that Madera represented a different approach to business from Wortham, and lastly, that most of the employees were in California and Wortham did not wish to register in California. During its brief period of operation, Madera manufactured one ditcher and two fork-lift attachments. It succeeded in selling one of the fork-lift attachments. Madera ceased the manufacture of all equipment in mid-November 1966. During this period of operation W. A. Norris, Jr., advanced various amounts to Madera. In December, 1966, the Board of Directors for Madera authorized the corporation to execute a promissory note to the First National Bank and Trust Company of Wyoming (Bank) in the amount of $85,000.-00. This was a consolidation of the amounts advanced by W. A. Norris. As security for the loan, the three stockholders above assigned all of their stock to the Bank as pledgees. On January 10, 1967, W. A. Norris and James W. Norris executed personal guarantees in their individual capacities for the note made by Madera. The personal guarantees were necessary for the Bank's practice did not permit one corporation (Wortham) to guarantee a loan made to another corporation (Madera). In return for the individual guarantees, the Bank then reassigned, on January 10, 1967, all of its rights as pledgee to James A. Norris and W. A. Norris. All payments on the note, in the amount of $3,000.00 per month, plus interest, were made by Wortham from February, 1967, through July, 1969.

Madera, beset by financial problems and apparently seriously under-capitalized, paid no salaries to its officers or directors after May, 1967. Its number of employees dwindled from 10 in 1966 to where it had no employees after May, 1968. In its fiscal year ending May 31, 1968, Madera had assets of approximately $138,000.00, while its liabilities to-

taled approximately $138,000.00. On December 10, 1968, the Board of Directors of Madera met and adopted a plan of liquidation. In exchange for 20 shares of Wortham's common stock, Madera transferred all of its assets and liabilities to Wortham. These 20 shares were divided equally among W. A. Norris and James W. Norris, who were then the only stockholders in Madera. Included among the assets received by Wortham were the hydraulic ditcher and a fork-lift attachment, which remain unsold. At the time of the exchange of the 20 shares of Wortham stock Madera had a total book value of approximately $1,600.00.

In filing its corporate return for the year ending June 30, 1969, Wortham claimed a net operating loss of $108,421.00. This represented liabilities assumed during the reorganization with Madera. The Internal Revenue Service disallowed the claim on the grounds that no valid business purpose existed for the reorganization, and even if there were, that the limitations of 26 U.S.C. § 382(b) would apply. As the result of an audit, the Internal Revenue Service taxed as constructive dividends to the Norrises the payments made by Wortham on the note executed by Madera. The Commissioner has conceded that the amounts taxed as constructive dividends in 1969 should not have been so treated, for following the reorganization Wortham was primarily liable for payments on the note.

Plaintiffs contend that there were valid business purposes for the reorganization of December, 1968, under Int.Rev. Code of 1954, § 368(a)(1)(C); that there is no limitation on inclusion of the net operating loss carryover, pursuant to Int.Rev.Code, § 382(b)(3); in the alternative, Wortham was entitled to a bad debt deduction under Int.Rev.Code, § 166, and that the payments made by Wortham are not taxable as constructive dividends to James W. Norris and William A. Norris, Jr.

▇ In addition to the express statutory requirements of a reorganiza-

tion, 26 U.S.C. § 368(a)(1)(C), there are implicit criteria which have been developed by the courts that must be met so as to have a tax-free reorganization and reap the statutory benefits. Primary among these criteria is that there must be some valid business purpose for the reorganization. See Carlberg v. United States, 281 F.2d 507 (8th Cir. 1960). This doctrine, that a transaction for which reorganization status is sought must be one in which there is a reformation or a reshaping of existing corporate business for the purpose of continuing that business in the new and changed corporate form, had its genesis in Gregory v. Helvering, 69 F.2d 809 (2nd Cir. 1934), aff'd 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). There must be a genuine intention to continue the former corporate business under a new corporate form. See Everett v. United States, 448 F.2d 357 (10th Cir. 1971). However, it has been said that it is not necessary that the successor corporation actually continue the business activities conducted by its predecessor nor that the successor corporation continue the business previously conducted by it. See United States v. Adkins-Phelps, Inc., 400 F.2d 737 (8th Cir. 1968). Although it is clear that where tax savings is the dominant intent, the taxpayer bears a heavier burden in saving the reorganization, see Diggs v. Commissioner of Internal Revenue, 281 F.2d 326 (2nd Cir. 1960); the existence of such a motive is, in the absence of contrary legislative intent, the launching point, and not the finish line, in the analysis of the components of the transaction. See Nassau Lens Co., Inc. v. Commissioner of Internal Revenue, 308 F.2d 39 (2nd Cir. 1962).

▇ "[T]he essence [therefore] of a [statutory reorganization] is a continuance of the proprietary interests in the continuing enterprise under modified corporate form . . . ." Lewis v. Commissioner of Internal Revenue, 176 F.2d 646, 648 (1st Cir. 1949); see also Darrell, "The Use of Reorganization Technique in Corporate Acquisition," 70

Harv.L.Rev. 1183 (1957). Under a reorganization, the continuance of a business under a modified corporate form is presupposed. Madera was organized as a separate corporate entity for compelling reasons as heretofore stated; among these reasons were the incompatibility of the two enterprises and disapproval by Wortham's supplier of any diversification of its operation. Madera manufactured equipment, totaling three pieces, for only about four and one-half months. At the time of reorganization Wortham was still operating as a retailer for Caterpillar Tractor Corporation. Madera sold only one piece of equipment and the remainder are still unsold. There was testimony that it has been the intent to carry on the business under the new form. "What is controlling is that a new arrangement intrinsically partake of the elements of reorganization . . . and not merely give the appearance of it . . .". Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 742, 67 S.Ct. 1489, 1491, 91 L. Ed. 1782 (1947). In a closely held corporation, as is here involved, it has been stated that in applying the "business purpose" test of Gregory v. Helvering, above, it is unrealistic to differentiate between "corporate" and "shareholder" purpose. See Lewis v. Commissioner of Internal Revenue, 176 F.2d 646 (1st Cir. 1949); Spear, "Corporate Business Purpose", 3 Tax L.Rev. 225 (1948). In such a case the two are most often one and the same. In this matter there appears no valid business purpose for the reorganization, for the forces compelling a separate corporation were still present in December, 1968. It is the burden of the taxpayer to establish his right to the deduction. See Gilbert v. Commissioner of Internal Revenue, 262 F.2d 512 (2nd Cir. 1959). Taxpayer, Wortham, has not met this burden.

Wortham claims that it is entitled, failing in the preceding, to a bad debt deduction for advances made to Madera. Among these advances were payments made on the promissory note, executed by Madera in consolidation of funds previously advanced by William A. Norris, Jr.

In determining whether payments are loans, the Court must look through the form to the substance of the transaction. "The fact that the advances were entered as loans on the books kept by the taxpayer . . . does not conclusively prove they were loans." Road Materials, Inc. v. Commissioner of Internal Revenue, 407 F.2d 1121, 1124 (4th Cir. 1969). "Whether advances made by a stockholder (Norris) to a closely held corporation (Madera) were contributions to capital or were loans is essentially one of fact upon which the taxpayer has the burden of establishing the right to the deduction . . .". Dodd v. Commissioner of Internal Revenue, 298 F.2d 570 (4th Cir. 1962). Although many factors have been considered by the courts in determining whether an advance is a loan, "[T]he primary question to be determined . . . is one of intent." Oleck, 3 Modern Corporation Law, § 1379 (1959). "If there is a bona fide intent to make a loan . . . [it] will be treated as a loan . . . The intent to repay, at the time the loan is made, is crucial . . . ." Cavitch, 7 Business Organizations, § 142.03[1] (1964). "It is not absolutely essential that the loan be evidenced by a note, but the absence of a note can be damaging . . . ." Cavitch, above at 603; see United States v. Durant, 324 F.2d 859 (7th Cir. 1963). In addition to the element of intent, other factors that have been considered include whether there was a date for repayment; whether demand for repayment was ever made; whether any of the advances were repaid; whether any security to insure repayment was furnished. See, Ludwig Bauman & Co. v. Commissioner of Internal Revenue, 312 F.2d 557 (2nd Cir. 1963); Byerlite Corporation v. Williams, 286 F.2d 285 (6th Cir. 1960), and cases cited therein. Looking at all the circumstances surrounding the transactions, in light of

the facts detailed above, it is clear that there was no real, bona fide intent to create a debtor-creditor relationship and that Wortham is not entitled to a bad debt deduction.

The Internal Revenue Service, as laid out in the statement of facts, assessed as constructive dividends, taxable to the stockholders, payments made by Wortham. "The crucial concept in finding a constructive dividend is that the corporation conferred an economic benefit on the stockholder without expectation of repayment . . . [C]ases make it clear that the 'economic benefit' test is controlling in spite of the fact that the distributions may not be recorded as a dividend." United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969); see also Gibbs v. Tomlinson, 362 F. 2d 394 (5th Cir. 1966); Sachs v. Commissioner of Internal Revenue, 277 F.2d 879 (8th Cir. 1960). The courts, as arbiters of the true nature of corporate payments, have consistently used this standard as the proper occasion for taxation. James W. Norris and William A. Norris signed as sureties on the note. There does not appear any indication that they were acting for or on behalf of Wortham. Indeed, the former advances made by William A. Norris were not evidenced by or dressed with the trappings of indebtedness.

"The law is equally well established . . . that a shareholder is not entitled to a business bad-debt deduction when a loan which he has made to enhance his stock interest in a corporation goes bad." United States v. Generes, 405 U.S. 93, 92 S.Ct. 827, 31 L.Ed.2d 62 (1971) (concurring opinion). "[P]etitioner has failed to establish that the debt in question was proximately related to her trade or business of being president and general manager rather than [his] status of controlling stockholder and practical owner of a substantial business." Weddle v. Commissioner of Internal Revenue, 325 F.2d 849, 851 (2nd Cir. 1963). It is for these reasons that any claims for individual bad debt deductions are disallowed.

Most of the authorities are of little value in determining whether a distribution is taxable as each case depends on its own facts. See Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (6th Cir. 1959). But all agree that actual facts, and not any book entries, if there be any, determine whether a dividend has constructively been paid to stockholders. Here Wortham made payments on notes guaranteed by James W. and William A. Norris. "[I]t is well settled that corporate payments in discharge of a shareholder-taxpayer's personal . . . liabilities are in the nature of constructive dividends. . . . Further . . . the weight to be given to the expressed intent of the corporation is necessarily lessened in the closely held corporation situation." United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969); see also Reade Manufacturing Co. v. United States, 301 F.2d 803 (3rd Cir. 1962); Greenspon v. Commissioner of Internal Revenue, 229 F.2d 947 (8th Cir. 1956). But see Sanders v. Fox, 253 F.2d 855 (10th Cir. 1958). In looking at the realities of the situation, it is obvious that "The corporation payment benefitted the [Norrises] because they were thereby relieved from making payment themselves." United States v. Smith, above, at 594. The payments did not represent payments of a bona fide indebtedness. "Accordingly, the payments constituted dividends under the broad coverage of section 115(a) . . ." Gooding Amusement Co. v. Commissioner, above, at 164. Therefore, the payments were properly taxable.

For the foregoing reasons, the claims made by the plaintiffs will be disallowed.

This memorandum opinion constitutes the Findings of Fact and Conclusions of Law and no additional Findings or Conclusions are necessary. A judgment of dismissal will be entered dismissing the complaint, together with the cause.