**WORTHAM MACHINERY COMPANY,**
**a Wyoming Corporation, et al.,**
**Plaintiffs-Appellants,**

v.

**The UNITED STATES of America,**
**Defendant-Appellee.**

No. 74–1481.

United States Court of Appeals,
Tenth Circuit.

Aug. 18, 1975.

---

Carl L. Lathrop, of Lathrop, Uchner & Mullikin, P. C., Cheyenne, Wyo., for plaintiffs-appellants.

David English Carmack, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Bennet N. Hollander, Attys., Tax. Div., Dept. of Justice, and Richard V. Thomas, U. S. Atty., of counsel, on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a suit for refund of federal income taxes. The problems arose out of the transfer of assets by one corporation to another. The main issues are (1) the right of the transferee to deduct transferor's net operating loss, (2) the right of the transferee to a bad debt deduction for advances to the transferor, and (3) the taxability as constructive dividends of payments made by transferee to its controlling stockholders. Except for specific items conceded by the government, the district court after trial without a jury held for the government, see *Wortham Machinery Company v. United States*, D.Wyo., 375 F.Supp. 835, and the taxpayers have appealed. We affirm.

I

Plaintiff-appellant Wortham Machinery Company is a family-owned, Wyoming corporation. Plaintiff-appellant James W. Norris had 32.34% of the stock. His wife Jeannette is named as a plaintiff-appellant because she and James filed joint income tax returns. Before his death William A. Norris, Jr., owned 30.99% of the stock. Plaintiff-appellant Carroll is the executor of William's estate. The remaining stock is owned by other family members.

Wortham was a Wyoming distributor for products of Caterpillar Tractor Company. William Norris and others incorporated in California Madera Manufac-

turing Company which was in the business of making and selling hydraulic ditchers and forklift attachments. Madera was established as a separate entity because (1) Caterpillar opposed the conduct of other business by its distributors, (2) the retailing and manufacturing businesses were incompatible, (3) the business approaches of Madera and Wortham were different, and (4) Wortham did not wish to register to do business in California, the residence of those who became Madera's employees.

Madera had a short and unprofitable existence. It made, but did not sell, one hydraulic ditcher, and made two forklift attachments, one of which was sold. It stopped manufacturing in November, 1966, and had no employees after May, 1968. In the winter of 1966–1967 Madera arranged for an $85,000 bank loan to consolidate advances made by William Norris. Madera's three stockholders pledged their Madera stock to the bank as security for the loan. James and William Norris personally guaranteed payment of the loan. The bank's rights in the pledged Madera stock were assigned to them equally. The note was payable in monthly installments of $3,000. These payments were made by Wortham from February, 1967, through July, 1969.

In December, 1968, Madera transferred all of its assets and liabilities to Wortham in exchange for 20 shares of Wortham's common stock. At the time of the exchange the fair market value of Madera's assets was $19,537 and its liabilities amounted to $40,331. The book value of the 20 shares of Wortham stock was $1,600. These 20 shares were equally divided between James and William Norris in exchange for their Madera shares.

## II

The first question is the right of Wortham to deduct in its tax return for the year ending June 30, 1969, the $108,421 net operating loss of Madera incurred before Wortham's assumption of Madera's liabilities and assets.

■ Section 361 provides that no gain or loss shall be recognized if a party to a corporate reorganization exchanges property "solely for stock" in another party to the reorganization. Section 368(a)(1)(C) provides, among other things, that "reorganization" means "the acquisition by one corporation, in exchange solely for all or a part of its voting stock * * *, of substantially all of the properties of another corporation * * *." Section 381 relates to carryovers in certain corporate acquisitions and § 382 imposes special limitations on net operating loss carryovers. The application of §§ 381 and 382 to our factual situation requires a § 361 type transfer in connection with a § 368 reorganization. In this regard it should be noted that in the enactment of §§ 381 and 382 among the objectives of Congress was the prevention of the avoidance of tax liability by "paper reorganizations." See *World Service Life Insurance Company v. United States*, 8 Cir., 471 F.2d 247, 251; *United States v. Fenix and Scisson, Inc.*, 10 Cir., 360 F.2d 260, 266, cert. denied 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 599; and H.Rep. No.1337, 83d Cong. 2d Sess., 3 U.S.Code Cong. & Admin.News '54 4025, 4067.

■ In considering subsection (g) of § 112 of the 1928 Revenue Act, a predecessor of § 368, the Court said in *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, that the section did not include "a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either." The effect of Gregory is to exclude from pertinent tax statutes commercial transactions "entered upon for no other motive but to escape taxation." *Commissioner of Internal Revenue v. Transport Trading & Terminal Corporation*, 2 Cir., 176 F.2d 570, 572, cert. denied 338 U.S. 955, 70 S.Ct. 493, 94 L.Ed. 589. The business purpose criterion announced in Gregory is embodied in Treas.Reg. 26 C.F.R. § 1.368–1(b) and (c), and 26 C.F.R. § 1.368–2(g). *Bazley v. Commissioner of*

*Internal Revenue,* 331 U.S. 737, 741, 67 S.Ct. 1489, 1491, 91 L.Ed. 1782, says that it is not enough for the transaction to meet the "inert language" of the statute but the reorganization must partake of those characteristics "which underlie the purpose of Congress in postponing tax liability." Taxpayer has the burden to prove business purpose. *David's Specialty Shops v. Johnson,* S.D.N.Y., 131 F.Supp. 458, 460.

█ The questioned transaction was within the "inert language" of § 368(a)(1)(C) because Wortham acquired all of Madera's assets in exchange for some of Wortham's stock. At the time Madera had no business; it had stopped production of the equipment for which it had been organized because there was no demand for that equipment. All of the factors which influenced the separate incorporation of Madera still existed except for employee location which was no longer pertinent because Madera had no employees. Wortham acquired one hydraulic ditcher and one forklift attachment which it tried to sell. True, Wortham acquired certain patents but there is no showing that it ever tried to make any use of them. Indeed, the only attraction shown by the record for the acquisition of Madera was the net operating loss carryover which Wortham used in its tax return to reduce its tax liability.

█ The district court said that "there appears no valid business purpose for the reorganization." 375 F.Supp. at 839. Taxpayers say that the court erred, first, because the government took the issue of tax avoidance out of the case when it conceded the inapplicability of § 269 which provides for the disallowance of tax benefits resulting from acquisitions made to evade or avoid income tax. By its own terms that section is inapplicable when the acquired corporation is controlled by stockholders of the acquiring corporation. James and William Norris each owned 50% of the Madera stock and each were Wortham stockholders. See § 269(a)(2). Taxpayers are not helped by *Hawaiian Trust Company Limited v.*

*United States,* 9 Cir., 291 F.2d 761. That case is factually and procedurally distinguishable from the instant case. The government's concession with regard to § 269 has nothing to do with the issue of business purpose in the questioned transaction.

Next, taxpayers say that the holding of the district court was clearly erroneous. The facts heretofore outlined show that substantial evidence sustains the finding of no business purpose. The third attack is that taxpayers have met the continuity of interest test, see *Helvering,* 293 U.S. at 469, 55 S.Ct. 266, because of testimony that Wortham intended to carry on the Madera business. The trial court recognized that testimony but chose to discredit it. This is not a case like *United States v. Adkins-Phelps, Incorporated,* 8 Cir., 400 F.2d 737, where there was a temporary suspension of business activities. Although we have here a continuity of proprietary interest because of the holdings of the Norris brothers in Madera and Wortham stock, there is no continuity of business enterprise. Madera had no business activity at the time of transfer and all Wortham did was to try to dispose of the ditching machine and forklift attachment. Liquidation of assets is not continuation of a business enterprise.

We are convinced that the Madera-Wortham transaction was not a reorganization within the purview of § 368(a)(1)(C). Accordingly, we have no reason to consider any questions arising under §§ 381 and 382.

### III

Taxpayers say that if Wortham may not deduct the net operating loss, it is entitled to a bad-debt deduction under § 166(a) in the amount that its payments to the bank on the Madera loan exceeded the value of the assets acquired from Madera. It will be remembered that Madera secured a bank loan to take care of the advances by William Norris and that Wortham made monthly payments of $3,000 to the bank on that loan.

Deduction is allowable only for a bona fide debt arising from a debtor-creditor relationship based on an enforceable obligation to pay a determinable sum. *Zimmerman v. United States,* 9 Cir., 318 F.2d 611, 612; see also Treas. Reg. 26 C.F.R. § 1.166–1(c). Taxpayer has the burden to establish his right to the deduction. *Ludwig Baumann & Co. v. Commissioner of Internal Revenue,* 2 Cir., 312 F.2d 557, 558; see also *Denver & Rio Grande Western Railroad Company v. Commissioner of Internal Revenue,* 10 Cir., 279 F.2d 368, 375. The loan was obtained on a note executed by Madera, secured by a pledge of Madera stock, and guaranteed by the Norris brothers. Wortham was not obligated to pay anything on the note. The payments which it made were voluntary. The record shows no expectation by Wortham that Madera would repay. Indeed, it could not because its liabilities exceeded its assets. The trial court correctly rejected the claim of a bad-debt deduction.

## IV

The district court held that Wortham's payments to the bank for credit to the Madera debt were constructive dividends to the Norris brothers. Those payments reduced the liability of the Norris brothers under their guarantee to the bank. A constructive dividend is paid when a corporation confers an economic benefit on a stockholder without expectation of repayment. *United States v. Smith,* 5 Cir., 418 F.2d 589, 593. A corporate payment in discharge of a stockholder's debt is in the nature of a constructive dividend. Ibid. The Wortham payments to the bank benefited its controlling stockholders, the Norris brothers. Nothing in the record discloses an expectation by Wortham of any repayment by the Norris brothers. The trial court correctly held that the payments were constructive dividends.

The individual taxpayers say that if the Wortham payments to the bank benefited the Norris brothers, then the payments were loans by the brothers to Madera and they are entitled to a bad-debt deduction. The principles stated previously on bad-debt deductions apply here. Nothing in the record shows that the brothers expected repayment from Madera. It may be that the brothers made a capital contribution to Madera. If that were the case, there was no bona fide debt for which the individual taxpayers may claim a deduction.

## V

The final objection goes to the action of the Commissioner of Internal Revenue, upheld by the district court, which reduced the deduction claimed by Wortham for additions to its bad debt reserve. If this point is properly before us, and we believe that it is not, the controlling principle is stated in *Merchant's Industrial Bank v. Commissioner of Internal Revenue,* 10 Cir., 475 F.2d 1063, 1064. A taxpayer attacking the Commissioner's determination that bad-debt reserve additions are excessive has the burden of establishing that the additions were reasonable and that their disallowance was an abuse of discretion. Wortham has failed to meet that burden.

Affirmed.