T.C. Summary Opinion 2005-52


UNITED STATES TAX COURT


WILLIAM H. BRUECHER III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRUECHER FOUNDATION SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 21530-03S, 21531-03S.    Filed April 25, 2005.


<u>Kent Mason Leediker</u>, for petitioners.

<u>Daniel N. Price</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  These consolidated cases
were heard pursuant to the provisions of section 7463 of the
Internal Revenue Code in effect at the time the petitions were
filed.  The decisions to be entered are not reviewable by any
other court, and this opinion should not be cited as authority.
Unless otherwise indicated, subsequent section references are to

the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows:

William H. Bruecher III--Docket No. 21530-03S

| Taxable Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|---|---|---|
| 1998 | $17,602 | -0- |
| 1999 | $10,077 | $504 |

Bruecher Foundation Services, Inc.--Docket No. 21531-03S

| Taxable Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|---|---|---|
| 3/31/2000[1] | $3,792 | $948 |

[1]Corporate fiscal tax year ending Mar. 31, 2000.

After concessions, the issues for decision are: (1) Whether petitioner William H. Bruecher, III received constructive dividends from Bruecher Foundation Services, Inc., in tax years 1998 and 1999 in the amounts of $33,082 and $48,112, respectively; and (2) whether petitioner Bruecher Foundation Services, Inc., is liable for the addition to tax under section 6651(a)(1) in the amount of $948.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

incorporated herein by this reference. Petitioner William H. Bruecher III (Mr. Bruecher) resided in Austin, Texas, and petitioner Bruecher Foundation Services, Inc. (Bruecher Foundation) had its principal place of business in Texas at the time of the filing of the respective petitions.

Mr. Bruecher started Bruecher Foundation as a sole proprietorship in 1989 and incorporated it in approximately 1994. Bruecher Foundation was engaged in the business of repairing foundations of homes and "light" apartment buildings. Mr. Bruecher is the sole shareholder of Bruecher Foundation and its chief executive. He actively operates Bruecher Foundation.

Bruecher Foundation has a history of not paying Mr. Bruecher a salary or a dividend. During the taxable years in issue, Mr. Bruecher did not maintain a personal bank account. Mr. Bruecher used Bruecher Foundation's bank account as his own, paying both his personal expenses and some expenses related to his Schedule C "landscaping/foundation" business from the corporate bank account. During those years, Mr. Bruecher maintained a business banking account for his Schedule C business, which account was separate from Bruecher Foundation's corporate banking account. Bruecher Foundation characterized the payments of Mr. Bruecher's personal expenses as "advances", recording the amounts paid on his behalf on its books under the account heading "Advance - Bruecher, WM."

Early in 1998, the balance in the "Advance - Bruecher, WM." account grew to more than $191,000. At that point, Mr. Bruecher's accountant reclassified about $114,000 of these advances as wages paid to Mr. Bruecher and filed an amended Form 941, Employer's Quarterly Federal Tax Return, for the first quarter of taxable year 1998, reporting said payment.[1]  Mr. Bruecher reported the $120,000 as wages on his 1998 Form 1040, U.S. Individual Income Tax Return. After the reclassification, the "Advance - Bruecher, WM." account had a balance of about $77,000.

Mr. Bruecher continued to pay his personal expenses from the corporation's bank account. Within 9 months of the deemed payment of wages, the balance in the "Advance - Bruecher, WM." account increased to $120,325.48. The following table contains examples of expenses recorded under the "Advance - Bruecher, WM." account and are taken directly from Bruecher Foundation's general ledger for the relevant time period:

---

[1]The following table reconciles the decrease in the "Advance - Bruecher, WM." account and Bruecher Foundation's deemed payment of wages:

| | |
|---|---|
| Decrease in "Advance - Bruecher, WM." | $114,019.20 |
| Social Security tax (payroll tax) | 4,240.80 |
| Medicare tax (payroll tax) | 1,740.00 |
| Total | 120,000.00 |

| Payment Type | Date | Number | Name of Payee | Memo | Amount |
|---|---|---|---|---|---|
| Check | 06/03/1998 | 9884 | Karen Robinson | Child Support | $800.00 |
| Check | 06/12/1998 | 9908 | Lori Bruecher | Per Divorce Agreement | 2,000.00 |
| Check | 07/04/1998 | 10022 | Albertsons | | 68.03 |
| Check | 07/07/1998 | 10028 | Best Buy | Television | 443.80 |
| Check | 09/04/1998 | 10126 | Seventeen | Magazine Sub. | 29.95 |
| Check | 09/11/1998 | 10267 | Green Tree | Harley Davidson | 355.04 |
| Check | 09/15/1998 | 10276 | Margaret Kilpatrick | Sea Doo | 500.00 |
| Check | 10/11/1998 | 10399 | Pat H. | Boat Repair | 300.00 |
| Check | 12/10/1998 | 10640 | Internal Revenue Service | 1997 1040 tax, penalty & int. | 425.80 |

As this table shows, Mr. Bruecher used Bruecher Foundation's bank account to pay various personal expenses. Rather than recognizing any of these payments made on behalf of Mr. Bruecher as deemed wages or dividends, the payments continued to be earmarked as "advances" and caused the "Advance -Bruecher, WM." account to exceed $141,000 at the close of Bruecher Foundation's fiscal year ending March 31, 1999. Even with certain adjustments to the "Advance - Bruecher, WM." account[2] to recognize rent paid to Mr. Bruecher for the corporation's use of real property, by the close of calendar year 1999, the account balance exceeded $200,000.

There were no written agreements such as promissory notes between Mr. Bruecher and Bruecher Foundation concerning the "advances" to Mr. Bruecher. Mr. Bruecher did not give any collateral in consideration for these "advances". Bruecher Foundation did not ask for or charge Mr. Bruecher interest and

_____

[2]For the fiscal year ending Mar. 31, 2000, the account "Advance - Bruecher, WM." was labeled "Advance Officer" in Bruecher Foundation's general ledger.

did not require a repayment schedule for such "advances". Bruecher Foundation did report the "advances" as a liability on each of its Forms 1120, U.S. Corporation Income Tax Return, Schedule L, Balance Sheets per Books for the fiscal tax years 1998 and 1999.

In the notice of deficiency issued to Mr. Bruecher, respondent determined that for tax years 1998 and 1999 he received constructive dividends in the amounts of $33,082 and $48,112, respectively. These amounts were computed by using figures in the "Advance - Bruecher, WM." account adjusted as follows:

Tax Year 1998

| Date | Amount |
|---|---|
| 04/01/1998 - Beginning balance | $77,318 |
| 12/31/1998 - Ending balance | 120,325 |
| Difference - Increase in balance | 43,007 |
| Corporate expenses paid by Mr. Bruecher[1] | 9,925 |
| Net constructive dividends | 33,082 |

Tax Year 1999

| Date | Amount |
| --- | --- |
| 01/01/1999 - Beginning balance | $120,325 |
| 12/31/1999 - Ending balance | 177,863 |
| Difference - Increase in balance | 57,538 |
| Corporate expenses paid by Mr. Bruecher[1] | 9,426 |
| Net constructive dividends | 48,112 |

[1]Such expenses could arguably be classified as contributions of capital by Mr. Bruecher to his corporation; however, respondent used these amounts to reduce the net constructive dividends.

## Discussion

### 1. Constructive Dividends

As stated previously, respondent determined that Mr. Bruecher received constructive dividends from Bruecher Foundation in tax years 1998 and 1999 in the amounts of $33,082 and $48,112, respectively. However, Mr. Bruecher argues that such distributions were loans from Bruecher Foundation and were made with the intent of being repaid.

The Commissioner is authorized to reconstruct income in accordance with any reasonable method that accurately reflects actual income. Secs. 446(b), 6001; Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); see Taglianetti v. United States, 398 F.2d 558, 562 (1st Cir. 1968), affd. on other grounds 394 U.S. 316 (1969). The reconstruction of a taxpayer's income need only be reasonable in light of the surrounding facts and circumstances. Giddio v.

Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Furthermore, it is axiomatic that "The Commissioner and the reviewing courts are permitted to fully examine any transaction to determine its economic and financial reality." Noble v. Commissioner, 368 F.2d 439, 443 (9th Cir. 1966), affg. T.C. Memo. 1965-84. Those transactions which lack economic substance may be ignored. See, e.g., Gregory v. Helvering, 293 U.S. 465, 467 (1935); Muhich v. Commissioner, 238 F.3d 860, 864 (7th Cir. 2001), affg. T.C. Memo. 1999-192.

Section 61(a) defines gross income as "all income from whatever source derived". The regulations demonstrate the term's expanse: "Gross income includes income realized in any form, whether in money, property, or services." Sec. 1.61-1(a), Income Tax Regs.; see Han v. Commissioner, T.C. Memo. 2002-148 (citing Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)). As the Supreme Court explained, an amount "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." Rutkin v. United States, 343 U.S. 130, 137 (1952).

However, funds distributed by a corporation to a shareholder over which the shareholder has dominion and control generally are taxed under the auspices of section 301(c). Barnard v. Commissioner, T.C. Memo. 2001-242. Pursuant to section 301(c), a

dividend is taxed as ordinary income only to the extent of the distributing corporation's earnings and profits;[3] any excess is a nontaxable return of capital to the extent of the taxpayer's basis; and any remaining amount received is taxable as capital gain from the sale or exchange of a capital asset.  Sec. 301(c)(1), (2), and (3); Truesdell v. Commissioner, 89 T.C. 1280, 1295-1298 (1987); Barnard v. Commissioner, supra.  The parties have stipulated that for the fiscal years ending March 31, 1999 and March 31, 2000, Bruecher Foundation had current and accumulated earnings and profits in excess of the "advances" at issue in these cases.

It is well established that "A greater potential for constructive dividends * * * exists in closely held corporations, where dealings between stockholders and the corporation are commonly characterized by informality."  Zhadanov v. Commissioner, T.C. Memo. 2002-104.

"Corporate expenditures constitute constructive dividends only if 1) the expenditures do not give rise to a deduction on behalf of the corporation, and 2) the expenditures create 'economic gain, benefit, or income to the owner-taxpayer.'"  P.R. Farms, Inc. v. Commissioner, 820 F.2d 1084, 1088 (9th Cir. 1987) (quoting Meridian Wood Prods. Co. v. United States, 725 F.2d

---

[3]The determination and calculation of earnings and profits is governed by sec. 316 and the regulations promulgated thereunder.

1183, 1191 (9th Cir. 1984)), affg. T.C. Memo. 1984-549). "The crucial concept in a finding that there is a constructive dividend is that the corporation has conferred a benefit on the shareholder in order to distribute available earnings and profits without expectation of repayment." Truesdell v. Commissioner, supra at 1295 (citing Noble v. Commissioner, supra at 443); see Williams v. Commissioner, 627 F.2d 1032, 1034 (10th Cir. 1980) (quoting Wortham Mach. Co. v. United States, 521 F.2d 160, 164 (10th Cir. 1975)), affg. T.C. Memo. 1978-306.

> "To constitute a distribution taxable as a dividend, the benefit received by the shareholder need not be considered as a dividend either by the corporation or its shareholders, declared by the board of directors, nor other formalities of a dividend declaration need be observed, if on all the evidence there is a distribution of available earnings or profits under a claim of right or without any expectation of repayment." * * *

Noble v. Commissioner, supra at 443 (quoting Clark v. Commissioner, 266 F.2d 698, 711 (9th Cir. 1959)). A "constructive dividend" is "simply a corporate disbursement that is a dividend in the contemplation of law though not called such by the corporation making the disbursement." United States v. Mews, 923 F.2d 67, 68 (7th Cir. 1991). Furthermore, to be a constructive dividend to a shareholder, the corporation need not pay it directly to the shareholder. Id.

The first consideration in determining whether a shareholder's withdrawals or advances from a corporation constitute loans or constructive dividends is whether, at the

time of the withdrawals or advances, the shareholder intended to repay the amounts received and the corporation intended to require repayment.  Miele v. Commissioner, 56 T.C. 556, 567 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1973).  Respondent's determination that the withdrawals or advances constitute constructive dividends, and therefore gross income, is presumptively correct, and petitioners bear the burden of proving that respondent's determination is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Miele v. Commissioner, supra at 567.  Section 7491(a) shifts the burden of proof to the Commissioner under certain circumstances.  The burden does not shift with respect to any factual issue relating to the present cases because petitioners did not introduce credible evidence.  Sec. 7491(a)(1).

A court may look to various factors to determine intent to repay, but, once the taxpayer's intent is found, that finding is conclusive of the legal issue of loans versus dividends.  Busch v. Commissioner, 728 F.2d 945, 948-949 (7th Cir. 1984), affg. T.C. Memo. 1983-98.  The issue of taxpayer intent in the loan versus dividend context is a question of fact, and, even though one must look at objective facts to determine intent, it is the taxpayer's actual intent or actual motive with which the Court is concerned.  Id. at 949; see also United States v. Pomponio, 563 F.2d 659, 662 (4th Cir. 1977); Livernois Trust v. Commissioner,

433 F.2d 879, 883 (6th Cir. 1970), affg. T.C. Memo. 1969-111; Berthold v. Commissioner, 404 F.2d 119, 121 (6th Cir. 1968), affg. T.C. Memo. 1967-102.

Establishing the taxpayer's intent by direct evidence is extremely difficult. Dean v. Commissioner, 57 T.C. 32, 43-44 (1971). Consequently, we must consider the taxpayer's testimony that he intended to repay, although such testimony is not determinative, and must consider objective factors to determine whether an advance constitutes a loan or a dividend. The following objective factors are often considered in deciding whether shareholder withdrawals or advances from a corporation are loans or constructive dividends: (1) The extent of shareholder control of the corporation; (2) the retained earnings and dividend history of the corporation; (3) the size of the withdrawals; (4) the presence of conventional indicia of debt, such as promissory notes, collateral, and provision for interest; (5) treatment of advances in corporate records; (6) the history of repayment; and (7) the shareholder's use of the funds. Busch v. Commissioner, supra at 948; see also Alterman Foods, Inc. v. United States, 505 F.2d 873, 877 n.7 (5th Cir. 1974).

Other objective criteria include "'whether the corporation imposed a ceiling on the amounts that might be borrowed, whether there were definite maturity dates, attempts to force repayment, intention or attempts to repay, and the shareholder's ability to

liquidate the loan.'" <u>Williams v. Commissioner</u>, <u>supra</u> at 1035 (quoting <u>Dolese v. United States</u>, 605 F.2d 1146, 1153 (10th Cir. 1979)). None of these factors, standing alone, is determinative of the issue before us. <u>Alterman Foods, Inc. v. United States</u>, <u>supra</u> at 876-877 n.6. However, these factors are useful in determining whether there is a true intention to repay.

As previously stated, Mr. Bruecher is the sole shareholder of Bruecher Foundation. He actively directs and operates Bruecher Foundation and makes the decisions as to the timing, amounts, and uses of the funds advanced by Bruecher Foundation.

Prior to 1998, Bruecher Foundation had paid Mr. Bruecher neither a salary nor a dividend. Mr. Bruecher first received a salary early in 1998 when his accountant reclassified about $114,000 of "advances" as wages. It is clear that Mr. Bruecher used Bruecher Foundation's bank account to pay his own personal expenses and in certain instances expenses related to his Schedule C "landscaping/foundation" business. In fact, for tax years 1998 and 1999, Mr. Bruecher maintained a business banking account for his Schedule C business, which was separate from Bruecher Foundation's banking account. He did not maintain his own separate personal bank account.

There were no written agreements such as promissory notes between Mr. Bruecher and Bruecher Foundation concerning the "advances" to Mr. Bruecher. Mr. Bruecher did not give any

collateral in consideration for these "advances". Bruecher Foundation did not ask for or charge Mr. Bruecher interest and did not require a repayment schedule for such "advances". Bruecher Foundation did report the "advances" as a liability on each of its Forms 1120 for the fiscal tax years 1998 and 1999.

As previously noted, in the notice of deficiency issued to Mr. Bruecher, respondent determined for tax years 1998 and 1999 that he received constructive dividends in the amounts of $33,082 and $48,112, respectively. The computation of these amounts was previously explained. Furthermore, Mr. Bruecher did not argue that such amounts were inaccurate.

Mr. Bruecher argues that he intended, in good faith, to create a debtor/creditor relationship with Bruecher Foundation and that he did have the intent of repaying these "advances". However, the only evidence presented by Mr. Bruecher which would indicate that these "advances" were loans was the corporate income tax returns (Forms 1120) and Mr. Bruecher's self-serving testimony. However, while this evidence is to be considered, it is not controlling. "Book entries and records may not be used to conceal a situation which is not in reality what it is made to appear." Fenn v. Commissioner, T.C. Memo. 1980-229.

Based upon the objective circumstances, we must reject Mr. Bruecher's contention that the "advances" at issue were bona fide loans. We conclude that such amounts were constructive dividends

distributed to Mr. Bruecher from Bruecher Foundation.
Respondent's determination that Mr. Bruecher received
constructive dividends is sustained.

2.   Section 6651(a)(1)--Failure To File

Respondent determined that Bruecher Foundation is liable for
an addition to tax under section 6651(a)(1) in the amount of $948
for taxable year ended March 31, 2000.

Section 6651(a)(1) imposes an addition to tax for the
failure to file timely a required return unless the failure is
due to reasonable cause and not due to willful neglect.
"Reasonable cause as applied in section 6651 has been defined as
the 'exercise of ordinary business care and prudence.'"  Estate
of Duttenhofer v. Commissioner, 49 T.C. 200, 204 (1967) (quoting
Southeastern Fin. Co. v. Commissioner, 153 F.2d 205 (5th Cir.
1946), affg. 4 T.C. 1069 (1945)), affd. 410 F.2d 302 (6th Cir.
1969); see also sec. 301.6651-1(c)(1), Proced. & Admin. Regs.
("If the taxpayer exercised ordinary business care and prudence
and was nevertheless unable to file the return within the
prescribed time, then the delay is due to a reasonable cause.").

Whether the failure to file on time was due to reasonable
cause is primarily a question of fact to be decided from all the
circumstances in a particular case.  See Estate of Duttenhofer v.
Commissioner, supra.

Bruecher Foundation's tax return for taxable year ending March 31, 2000, was filed more than 8 months after the due date of June 15, 2000.  Bruecher Foundation claims that its failure to file its return in a timely manner was due to reasonable cause in that Bruecher Foundation relied on its accountant to file a request for an extension for such tax return.  Mr. Bruecher testified that his accountant, Richard Heiling (Mr. Heiling), usually filed for extensions for Bruecher Foundation returns and that he believed Mr. Heiling had done so for taxable year ended March 31, 2000.  However, Mr. Bruecher failed to produce any evidence that an extension request was filed or that his reliance was reasonable.  Accordingly, although Bruecher Foundation has provided a reason for failing to timely file, it has not provided a reason for which its failure to file can be excused.

3.   Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decisions will be entered

for respondent.