EDUARDO CEPEDA AND MARTA I. CEPEDA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDUARDO CEPEDA, M.D., P.A., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cepeda v. Commissioner
Docket Nos. 298-92, 299-92
United States Tax Court
T.C. Memo 1993-477; 1993 Tax Ct. Memo LEXIS 488; 66 T.C.M. (CCH) 1032; October 18, 1993, Filed *488 Decision will be entered under Rule 155. For petitioners: John Edward Leeper. For respondent: Derek B. Matta. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Docket No. 298-92:
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6661
1988
$ 32,895
$ 1,645
$ 8,224
Docket No. 299-92:
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
8/31/87
$ 4,602
$ 621
--
$ 741
[1]
12/31/88
25,791
--
$ 1,290
--
--
The issues for decision are: (1) Whether withdrawals from the corporation in the net amount of $ 91,423 by petitioners [1] during tax year 1988 were bona fide loans and not constructive dividends or additional employee compensation; (2) whether petitioners are liable for additions to tax under section 6653(a)(1) [2] for negligence for 1988; (3) whether petitioners are liable for additions to tax under section 6661 for substantial understatement of tax liability for 1988; (4) whether $ 25,078 advanced *489 by petitioner Eduardo Cepeda, M.D., P.A. (hereinafter ECPA), during fiscal year ended (FYE) August 31, 1987, to cover deficits in Valley Medical Surgical Clinic's operating capital was an ordinary and necessary business expense of the corporation under section 162; (5) whether ECPA is entitled to a bad debt deduction during 1988 for $ 161,479 in advances made to petitioner; (6) whether ECPA is liable for additions to tax under section 6651(a) for failure to timely file its Federal income tax return for FYE August 31, 1987; and (7) whether ECPA is liable for additions to tax under section 6653(a) for negligence for the years in issue. *490 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time they filed their petition, petitioners resided as husband and wife in El Paso, Texas. ECPA's principal place of business was in the State of Texas. Petitioner was born in Victoria, Mexico. He completed his college and medical school education at the National University of Mexico in Mexico City. Petitioner's college curriculum did not include any accounting courses. From 1971 to 1974, petitioner performed his residency at St. Francis General Hospital in Pittsburgh, Pennsylvania. From 1974 to 1976, petitioner completed a fellowship in pulmonary medicine at Case Western Reserve University in Cleveland, Ohio. On August 26, 1980, petitioner created and organized ECPA as a professional association in the State of Texas. Petitioner was the sole shareholder and president of ECPA. The Form 1120 corporate income tax return for ECPA for FYE August 31, 1987, was due with extension on May 15, 1988, but was not filed until July 25, 1988. ECPA timely filed corporate returns for fiscal years ended December 31, 1987, *491 and December 31, 1988. ECPA initially employed the public accounting firm of Bixler, Carlton, Pittenger & Co. to do its bookkeeping, payroll reports, yearend statements and preparation of corporate tax returns for fiscal years ended August 31, 1981, to August 31, 1986. Max Viescas was the certified public accountant in charge of the ECPA account until November 1, 1986. Mr. Dru John, a certified public accountant, was employed by ECPA to do its accounting and prepare its corporate tax returns for the period September 1, 1986, through August 31, 1987. On June 25, 1984, petitioner, along with three other doctors, [3] created Valley Surgical Medical Clinic, Inc. (hereinafter VSMC), a full outpatient medical-surgical facility. The clinic had four office spaces, an emergency room for minor emergencies, a laboratory, operating and recovery rooms, a waiting room, and a business office. The stock of VSMC was owned by petitioners and the three other doctors. ECPA did not have a financial interest in nor was it responsible for the financial obligations of VSMC. *492 In 1985, petitioner and the three doctors that created VSMC[4] formed Medical Properties Partnership. Each doctor had an equal ownership interest. The partnership owned 3 acres of land and a building on Alameda Street, in which space was leased to VSMC. A $ 2 million note against the land and building was individually guaranteed by each of the four partners. During FYE August 31, 1987, ECPA leased office space from VSMC. There was no written lease agreement. ECPA's lease with VSMC was an "open lease" whereby ECPA paid $ 2,000 per month in rent and was called upon to cover deficits in VSMC's operating capital. In addition to paying $ 2,000 per month in direct rent, ECPA advanced an additional $ 28,078 to cover deficits in VSMC's operating capital, classifying and deducting the amount on its corporate return as rent expense. The other three doctors with interests in VSMC made similar advances. On its FYE August 31, 1987, corporate Federal income tax return, ECPA claimed a total of $ *493 53,328 in rent expense deductions. In the notice of deficiency, respondent allowed only $ 28,250 of that amount and increased ECPA's taxable income with the remaining amount of $ 25,078, which is consequently at issue in this case. ECPA's decision to cover VSMC's operating deficiencies was made by petitioner. Petitioner felt that the success of ECPA was directly tied to the success of VSMC because of VSMC's location and the referrals ECPA received. Additionally, by keeping VSMC operating, ECPA was able to avoid incurring the additional substantial expense of purchasing the equipment it used at VSMC and relocating to another facility. In May 1987, the lender bank, Interfirst/First Republic Bank, foreclosed on the real property on Alameda Street where VSMC was located. After the foreclosure, the three other doctors left VSMC, leaving ECPA with access to only part of the facilities. Upon foreclosure, ECPA began paying rent directly to the bank. Between June 1 and August 31, 1987, ECPA paid $ 12,650 to the bank in rent. Prior to January 1, 1988, ECPA advanced $ 161,479 to or on behalf of petitioner for the payment of his personal expenses and investments. Petitioner made the *494 decision to have the corporation advance the funds in issue because he was the representative of the corporation. ECPA maintained a "due from stockholders account" reflecting advances by the corporation for petitioner's personal expenses and investments. ECPA did not pass a corporate resolution authorizing the advances made to petitioners. Petitioners did not execute a loan or note or provide security or collateral in exchange for the advances received from ECPA. In addition, no documents were presented that contained a schedule of repayment or the rate of interest to be charged on the above advances. On November 23, 1987, petitioners voluntarily filed bankruptcy under chapter 7 of the United States Bankruptcy Code. Petitioners filed a Statement of Financial Affairs for Debtor Engaged in Business on January 25, 1988, listing ECPA as an unsecured creditor. On February 29, 1988, the United States Bankruptcy Court for the Western District of Texas discharged petitioners from all dischargeable debts. On January 1, 1988, ECPA wrote off the shareholder account balance in the amount of $ 161,479 as a bad debt deduction. No efforts were made by ECPA to collect on the debt owed by *495 petitioners. Despite the bankruptcy, during 1988, ECPA advanced $ 95,101 in payments to or on behalf of petitioner. Of the $ 95,101 in issue, $ 43,461 was made in payments to the bankruptcy trustee on behalf of petitioner to repurchase ECPA's stock from the bankruptcy estate. As before, no notes were signed and no collateral was provided as security in exchange for the advances. Again, ECPA did not pass any corporate resolutions authorizing the advance of funds. As with the pre-1988 advances made by ECPA, the corporation's decision was petitioner's sole decision. Petitioners did not present any checks from their personal account which reflected repayment to ECPA during 1988. However, during 1988, 1989, and 1990, petitioner deposited distribution checks from his investment in El Paso Health Care Systems into the corporate account of ECPA in the amounts of $ 3,678, $ 9,731, and $ 10,199, respectively. During the years in issue, petitioner received compensation from ECPA in the amounts of $ 69,021 for FYE August 31, 1987, $ 18,931 for FYE December 31, 1987, and $ 125,444 for FYE December 31, 1988. ECPA did not declare or pay a dividend to its shareholder (petitioner). ECPA *496 had unappropriated retained earnings of $ 162,333 for FYE August 31, 1987, $ 195,074 for FYE December 31, 1987, and $ 103,254 for FYE December 31, 1988. On October 8, 1991, respondent issued notices of deficiency to petitioners for tax year 1988 and to ECPA for fiscal years ended August 31, 1987, and December 31, 1988. [5] In the notice to petitioners, respondent determined that they had received corporate distributions in the form of dividends from ECPA in the amount of $ 91,423 [6] during 1988. Petitioners have stipulated that they omitted $ 8,666 of taxable income, which they received from West Texas Diagnostic partnership, on their 1988 Federal income tax return. In the notice to ECPA, respondent disallowed the $ 25,078 rent deduction and the $ 161,479 bad debt deduction. *497 OPINION Respondent's determination of deficiencies for the years in issue is presumed correct, and petitioners bear the burden of proving respondent erred. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Because of the close association between petitioners Eduardo and Marta Cepeda and petitioner ECPA, issues that affect both cases will be addressed concurrently. Corporate (ECPA) Advances to Petitioners
Prior to January 1, 1988, ECPA made advances in the amount of $ 161,479 to petitioners for personal expenses and investments. Petitioners subsequently filed bankruptcy and received a discharge on February 29, 1988, from the obligation. [7] Accordingly, ECPA claimed a bad debt deduction on its Form 1120 for tax year 1988. During 1988, petitioners withdrew $ 95,101 from ECPA, using $ 43,461 to repurchase ECPA stock from the bankruptcy estate. Respondent contends that the bad debt deduction should be disallowed and the 1988 withdrawals included in petitioners' income because the advances were actually constructive dividends. Petitioners conversely argue that the advances in both instances represent bona fide loans and therefore should *498 be excluded from their income. For the same reason, ECPA maintains that its bad debt deduction was proper. Section 61 defines gross income as all income from whatever source derived, including but not limited to compensation for services, interest, rents, royalties, dividends, pensions and gains derived from dealings in property. Section 301(c) provides that a corporate distribution is taxable as a dividend as defined in section 316. A dividend is defined as any distribution of property made by a corporation to its shareholders out of its earnings and profits (hereinafter E&P) accumulated after February 28, 1913, or out of its E&P of the taxable year without regard to the amount of E&P at the time the distribution was made. Sec. 316(a)(1) and (2). Section 166(a) allows the deduction of any debt which becomes worthless within the taxable year. Only a bona fide debt qualifies for purposes of section 166. *499 A bona fide debt is defined as a debt which arose from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Wortham Machine Co. v. United States, 521 F.2d 160, 164 (10th Cir. 1975); Sec. 1.166-1(c), Income Tax Regs.
The determination of whether the corporate advances are deductible by ECPA or excluded from petitioners' income depends primarily on whether the advances can be characterized as constructive dividends. The determination of whether the transfers, in substance, are loans or dividends is a factual issue and depends primarily upon the good faith intention of the shareholder to repay the amounts received and the intention of the corporation to receive the payments. Williams v. Commissioner, 627 F.2d 1032, 1034 (10th Cir. 1980), affg. T.C. Memo. 1978-306. In cases involving closely held corporations, particular scrutiny is required because of the unfettered control exercised by a limited numbers of shareholders. Jimenez v. Commissioner, 496 F.2d 876 (5th Cir. 1974), affg. without published *500 opinion Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324 (1971). A constructive dividend is paid when a corporation confers an economic benefit on a stockholder without expectation of repayment. Ireland v. United States, 621 F.2d 731, 735 (5th Cir. 1980); Crosby v. United States, 496 F.2d 1384, 1388 (5th Cir. 1974). There is a twofold test for constructive dividends: The expenses must be nondeductible to the corporation and they must represent some economic gain, benefit or income to the owner-taxpayer. Meridian Wood Prod. Co. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984). The most significant factor is whether the distributions were primarily for the shareholder's benefit. Crosby v. United States, supra at 1389 (citing Sammons v. Commissioner, 472 F.2d 449 (5th Cir. 1972), affg. in part and revg. in part T.C. Memo. 1971-145). In making this determination, courts have considered the following factors in deciding whether advances or withdrawals were constructive *501 dividends or loans: (1) the extent to which the shareholder participates in the management of, and controls, the corporation; (2) the earnings and dividend history of the corporation; (3) the magnitude of the advances and whether a ceiling existed to limit the amount the corporation advanced; (4) whether or not security was given for the loan; (5) whether the parties executed notes; (6) whether there was a set maturity date; (7) whether there was a fixed schedule of repayment; (8) whether there was any indication the shareholder attempted to repay the advances; (9) whether the corporation ever undertook to force repayment; (10) whether the shareholder was in a position to repay the advances; and (11) whether the advances to the shareholder were made in proportion to his stock holdings. See Piggy Bank Stations, Inc. v. Commissioner, 755 F.2d 450, 453 (5th Cir. 1985), affg. T.C. Memo. 1982-365; Alterman Foods, Inc. v. United States, 505 F.2d 873, 875-877 (5th Cir. 1974); Estate of Sell v. Commissioner, T.C. Memo. 1992-430. The factors are not of equal *502 significance and no one factor is controlling. Alterman Foods, Inc. v. United States, supra; J. A. Tobin Constr. Co. v. Commissioner, 85 T.C. 1005 (1985). Unfettered control of a corporation by a shareholder tends to support a finding that amounts advanced to the shareholder by the corporation are constructive dividends. Thielking v. Commissioner, T.C. Memo. 1987-227, affd. without published opinion 855 F.2d 856 (8th Cir. 1988). In addition, a corporate history of not declaring and paying dividends in spite of the existence of substantial E&P weighs on the side of a constructive dividend determination. Id.; see also Busch v. Commissioner, T.C. Memo. 1983-98, affd. 728 F.2d 945 (7th Cir. 1984). It is clear from the facts in this case that the advances made by ECPA to petitioners were constructive dividends and not loans. Petitioner was the sole shareholder of ECPA and made the decisions, in both instances, to make the advances to himself. Therefore, there was no objective evaluation as to petitioners' *503 ability to repay the amounts advanced or withdrawn, especially after petitioners' bankruptcy. During the years in issue, ECPA did not declare or pay a dividend to petitioners. Moreover, ECPA had unappropriated retained earnings of $ 162,333 for FYE August 31, 1987, $ 195,074 for FYE December 31, 1987, and $ 103,254 for FYE December 31, 1988. Petitioners' unfettered control and ECPA's history of not paying dividends despite substantial E&P clearly favor a constructive dividend determination. In addition, ECPA did not pass a corporate resolution authorizing the advances. No corporate minutes exist substantiating any formal action taken by the corporation's board of directors. Petitioners did not execute a loan or note to evidence the alleged loan, nor did they provide security or collateral in exchange for the advances. No documents were introduced exhibiting a set maturity date for repayment, a repayment schedule, or the rate of interest to be charged. Finally, petitioners failed to present any checks from their personal account indicating repayment to ECPA during the years in issue. Petitioners argue that the true intent of the parties is to be discerned from all the surrounding *504 circumstances including the bookkeeping entries, the expressions of the parties to the transactions, the financial condition of the borrower, and the expectation of repayment. See Irbco Corp. v. Commissioner, T.C. Memo. 1966-67 (citing Schnitzer v. Commissioner, 13 T.C. 43, 60 (1949), affd. per curiam 183 F.2d 70 (9th Cir. 1950)). They further assert that, although the book entry of an advance as a debt (ECPA posted advances to a "due from stockholders" account) is not conclusive, when the contemporaneous behavior of the parties harmonizes with the form they have given the transaction, it must be given significant weight in revealing the intent of the parties at the time. Id.
However, in the present case, the parties' behavior does not harmonize with the form they have given the transaction through accounting book entries. Although ECPA had a "due from stockholders" account, the corporation's other actions do not harmonize with this book entry. Therefore, we find petitioners' assertions to be without merit. Petitioners further contend that the deposit of checks received from their investment *505 in El Paso Health Care Systems into the corporation's shareholder receivables account evidences repayment and thus the existence of a loan. However, the documentary evidence does not corroborate their claim. ECPA's corporate return for tax year 1988 under Schedule L, line 6, for loans to stockholders, showed an amount of $ 95,100. Petitioners failed to explain why the deposit of a distribution check in the amount of $ 3,678, if truly a repayment, did not decrease the balance of the alleged loan as reported on Schedule L. We find this to be further persuasive evidence that the advances in issue were not loans but constructive dividends. Even if petitioners' deposits of these checks from 1988 to 1990 were truly intended to be repayments, they have still failed to establish that an actual debtor-creditor relationship existed between them and ECPA during the years in issue. Furthermore, without the existence of a promissory note or other documents proving the existence of a loan, ECPA would have been virtually unable to enforce the obligation, enforceability being a requirement for a bona fide debt under section 166. Accordingly, we find that the corporate advances of $ 161,479 *506 to petitioners prior to January 1, 1988, and the withdrawal of $ 95,101 by petitioners during tax year 1988, were constructive dividends and not loans. [8] Therefore, ECPA's bad debt deduction during 1988 is disallowed. Furthermore, petitioners must include $ 91,423 in their gross income for tax year 1988. Section 162 Rent Deduction by ECPA
During FYE August 31, 1987, ECPA leased office space and use of facilities and equipment from VSMC, a corporation in which petitioner was *507 one of four shareholders. ECPA's lease with VSMC was an "open lease" in that ECPA paid $ 2,000 per month in rent and was called upon to cover deficits in VSMC's operating capital. During FYE August 31, 1987, ECPA paid $ 28,078 to cover deficits in VSMC's operating capital, which was subsequently deducted as additional rent expense on ECPA's corporate tax return. Respondent disallowed $ 25,078 of the total rent expense deduction on the grounds that the above payments did not constitute ordinary and necessary business expenses under section 162. Petitioner argues that the payments were necessary because the economic viability of ECPA was dependent on the continuing operations of VSMC. The only issue remaining is whether the payments are deductible as ordinary and necessary business expenses of ECPA. Section 162(a) provides a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. These expenses include "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title *508 or in which he has no equity." Sec. 162(a)(3). Petitioner bears the burden of establishing that the expenses incurred were ordinary and necessary, and were directly connected to the corporation's trade or business. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). A payment is "ordinary" within the meaning of section 162 when it falls within a common practice in the business community. It is "necessary" if the expenditure was motivated by the intent that it would result in a business benefit. Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352-353 (1971); Seligman v. Commissioner, 796 F.2d 116 (5th Cir. 1986), affg. 84 T.C. 191 (1985). Petitioner relies on this Court's decision in Dinardo v. Commissioner, 22 T.C. 430 (1954), in which we held that payments by one corporation to or on behalf of a related corporation are deductible business expenses if made to advance the corporation's own business interest. In Dinardo, the taxpayers created a partnership for the practice of medicine. The taxpayers *509 also organized a nonprofit corporation which operated a private hospital, Collinwood Hospital. The medical partnership's offices were located in the hospital and it received fees from patients referred to the hospital for medical services. The partnership's earnings received a direct benefit from operating at the hospital. In order to keep the hospital in operation when expenses exceeded receipts and to avoid loss of medical fees, the partnership agreed to pay the hospital's operating deficits. We found these payments to be ordinary and necessary business expenses. Id. at 435. As in Dinardo, respondent in the present case contends that expenses incurred for the benefit of another taxpayer are not deductible under section 162. Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943); Deputy v. du Pont, 308 U.S. 488 (1940). In Dinardo, we distinguished that case from Interstate Transit Lines v. Commissioner, supra.We found that the partnership did not pay Collinwood Hospital's operating deficits to enable Collinwood to make profits from *510 the operation of a hospital, thereby to augment the partnership income with hospital income. Rather, the payments were made to keep Collinwood in operation so that the medical partnership itself could earn medical fees from patients who would be hospitalized at Collinwood, or who would be sent to the partnership because of referrals from or access to Collinwood's facilities. Similarly, in the case at hand, petitioner made the payments to cover VSMC's operating deficits, not to increase the clinic's profits. The payments were made to keep VSMC in operation so that ECPA could continue to earn medical fees from patients who came to VSMC or were referred to ECPA because of its access to VSMC. Petitioner felt that the success of ECPA was directly linked to the success of VSMC because of VSMC's location and referrals. Additionally, by keeping VSMC in operation, ECPA was able to avoid the additional substantial expenses of purchasing equipment it had access to at VSMC and relocating to another facility. Clearly, the payments would render ECPA a benefit as required under the "necessary" component of section 162. This case is also distinguishable from Deputy v. du Pont, supra, *511 which involved the disallowance of a stockholder's deductions for expenditures made on behalf of his corporation, where the corporation's business operations were unrelated to any business the stockholder carried on other than as a source of investment income. As in Dinardo, we find that this case more closely resembles the situations involved in decisions which allow, as ordinary and necessary business expenses, payments made by a taxpayer to protect or preserve its business income from loss or diminution. See Associated Milk Producers, Inc. v. Commissioner, 68 T.C. 729 (1977); L. Heller & Son, Inc. v. Commissioner, 12 T.C. 1109 (1949). In conclusion, we agree with petitioners that Dinardo is directly applicable to the case at hand. Accordingly, we find that ECPA's payments in the amount of $ 25,078 to cover VSMC's operating deficits are ordinary and necessary business expenses and thus properly deducted under section 162 for the year in issue. Additions to Tax -- Negligence
In her notice of deficiency, respondent determined that petitioners are liable for an addition to tax under section 6653(a)(1) *512 for tax year 1988 and ECPA is liable for negligence additions to tax for FYE August 31, 1987, and FYE December 31, 1988. Negligence under section 6653(a) is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). Petitioners bear the burden of proof regarding the additions to tax under section 6653(a). Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). However, good faith reliance on the advice of counsel or a qualified accountant can, under certain circumstances, be considered "reasonable cause" and thus a defense to negligence. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). *513 Section 6653(a)(1)(A), in effect for 1987, provides that if any part of the underpayment is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the entire underpayment. Section 6653(a)(1)(B), in effect for 1987, imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence or intentional disregard. An "underpayment" for purposes of section 6653 is a "deficiency" as defined in section 6211, i.e., the amount by which the tax liability exceeds the tax shown on the return, except that the tax shown on the return is taken into account only if the return was timely filed. See sec. 6653(c)(1). As to ECPA for FYE August 31, 1987, the entire underpayment or deficiency is comprised of $ 25,078 deducted as rent expense for payments to cover VSMC's operating deficits, which we found to be proper. However, because an untimely return was filed for FYE August 31, 1987, an underpayment was automatically created in the amount of the correct tax, regardless of the amount of tax reported on the untimely return or the *514 amount of tax actually owed. Secs. 6653(a), (c) and 6211(a) and (b)(1); see also Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Therefore, the remaining issue is whether the untimely filing of the return was negligent or an intentional disregard of the rules and regulations by ECPA. Taxpayers have a statutory duty to timely file their income tax returns, sec. 6072(a), and the breach of this duty is sufficient evidence of negligence. Emmons v. Commissioner, supra. By establishing that ECPA did not file its tax return by the statutorily prescribed date, respondent has made a prima facie case for negligence, thus shifting the burden of going forward with evidence to ECPA. ECPA's failure to rebut respondent's prima facie case with evidence of an adequate and reasonable excuse or justification for the late filing will result in a decision for respondent. Id.; cf. Robinson v. Commissioner, 57 T.C. 735, 737 (1972). As discussed below in the context of the section 6651(a) addition to tax, ECPA failed to proffer any evidence *515 establishing a reasonable excuse or justification. Accordingly, we find ECPA liable for the section 6653(a)(1)(A) and (B) negligence additions for 1981. The additions shall apply to the entire underpayment. Section 6653(a)(1), in effect for 1988, similarly provides that if any part of the underpayment is due to negligence, 5 percent of the entire underpayment shall be added to the tax. However, beginning in 1988, section 6653 no longer imposes an addition to tax equal to 50 percent on interest associated with the portion of the underpayment due to negligence. On their 1988 individual tax return, petitioners failed to report $ 8,666 of income received from West Texas Diagnostic partnership. Petitioners contend that the exclusion of this amount from their personal income was an innocent mistake resulting from petitioner's depositing his personal income into ECPA's account in repayment of the corporate advances. They assert that their accountant erroneously omitted the amount, picking up a portion as income to the corporation. However, petitioners failed to corroborate this assertion with any documentary evidence. Because no exercise of due care on their part was shown, *516 petitioners have failed to meet their burden as to this portion of the underpayment. Neely v. Commissioner, supra. Therefore, since petitioners have failed to meet their burden as to this portion of the underpayment, we find them liable for negligence as to the entire underpayment under section 6653(a)(1) for tax year 1988. Consequently, we need not address whether they were negligent as to the portion of the underpayment attributable to the 1988 withdrawals of $ 95,101. As to ECPA for FYE December 31, 1988, the disallowance of the deduction claimed as a bad debt accounts for the entire deficiency determined by respondent. We do not think it was reasonable for the corporation to believe that it created a bona fide debtor-creditor relationship with its sole shareholder when it shifted such large amounts of money from the corporate pockets to his individual pocket, with no promissory note, no interest, and no repayment schedule. We thus find ECPA liable for the negligence addition in fiscal year 1988. Addition to Tax -- Failure To File Timely Return
Respondent determined that ECPA is liable for the addition to tax for failure to file its *517 Federal corporate tax return on or before the due date. Section 6072(b) provides that corporate tax returns made on the basis of a fiscal year shall be filed on or before the 15th day of the 3d month following the close of the fiscal year. The Secretary of the Treasury may grant a reasonable extension for filing a return, up to a maximum of 6 months. Sec. 6081(a). Section 6651(a)(1) provides for an addition to tax for failure to file a return timely. However, the addition is not applicable if "it is shown that such failure is due to reasonable cause and not due to willful neglect". Sec. 6651(a)(1). Petitioners have the burden of proving such failure was due to reasonable cause. Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342 (1971), affd. without published opinion sub nom. Jiminez v. Commissioner, 496 F.2d 876 (5th Cir. 1974). The amount of the penalty is 5 percent for each month or fraction of a month for which the return is delinquent, not to exceed 25 percent in the aggregate. Sec. 6651(a)(1). ECPA's return *518 for FYE August 31, 1987, was due on November 15, 1987. Pursuant to the filing of Form 7004 (Application for Automatic Extension of Time to File Income Tax Return) on November 15, 1987, the due date was extended until May 15, 1988. ECPA filed its Form 1120 corporate return for the year in issue on July 25, 1988. ECPA alleges that its delinquent filing was due to reasonable cause because its accountant, Mr. Dru John, had multiple recurring medical problems which caused him to miss work frequently and consequently to file the return late. In addition, petitioner, the president of ECPA, was in personal bankruptcy from November 23, 1987, through February 29, 1988, which allegedly tied up some of the paperwork needed to complete the return. We agree with respondent that ECPA has failed to prove that its failure to timely file was due to reasonable cause and not willful neglect. It has been previously held that the taxpayer is the person primarily responsible for ensuring that his tax returns are filed in a timely manner. United States v. Boyle, supra at 247; see also Faulkner v. Commissioner, T.C. Memo. 1980-90. In *519 Faulkner, the taxpayer testified that his return was 2-1/2 months late because of the illness of his tax return preparer. In reaching our conclusion, we noted that no evidence existed showing that the taxpayer took any steps to assure that the return was filed on time, such as making inquiries about the return or attempting to retrieve papers so that the return could be prepared. Under the circumstances, we found that the illness of the return preparer did not constitute reasonable cause for the late filing of the return. Faulkner v. Commissioner, supra (citing Robinson's Dairy, Inc. v. Commissioner, 35 T.C. 601 (1961), affd. 302 F.2d 42 (10th Cir. 1962); Schmidt v. Commissioner, 28 T.C. 367 (1957), revd. and remanded on another issue 272 F.2d 423 (9th Cir. 1959)). In the present case, ECPA similarly espouses the ill tax preparer excuse. As in Faulkner, no evidence was presented in the case at hand revealing any efforts by ECPA to ensure that the return was filed on time. In addition, a 6-month extension was granted by *520 respondent, affording ECPA ample time to find another tax preparer. Accordingly, we find ECPA liable for the addition to tax under section 6651(a)(1) for failure to timely file its corporate tax return for FYE August 31, 1987. Addition to Tax -- Substantial Understatement
Respondent determined that petitioners are liable for additions to tax under section 6661 for substantial understatement of income tax liability for 1988. Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. An understatement of tax is substantial if it exceeds the greater of: (1) 10 percent of the tax required to be shown on the return for a taxable year, or (2) $ 5,000. Sec. 6661(b)(1)(A). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). The amount of the understatement can be reduced if substantial authority exists or existed for petitioners' tax treatment of the item in dispute or if *521 relevant facts regarding petitioners' treatment of the item were adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Petitioners argue that substantial authority exists for their treatment of the advances as loans and that these loans were adequately disclosed on their 1988 corporate tax return (ECPA). We disagree. Petitioners have failed to identify any authority to support their position that these purported loans by the corporation to its sole shareholder, made on open account with no provision for interest and no ascertainable maturity date, are true debt rather than constructive dividends. Furthermore, as espoused by respondent, we have previously held that disclosure by the corporation, a separate legal entity, on its corporate return would not constitute a disclosure by the taxpayer/shareholder on his individual return. See Estate of Sell v. Commissioner, T.C. Memo. 1992-430. Accordingly, we sustain respondent's determination and find petitioners liable for an addition to tax for substantial understatement of tax liability under section 6661(a) for tax year 1988. Conclusion
We find that *522 the advances made by ECPA to petitioners prior to January 1, 1988, and during tax year 1988 were constructive dividends and not loans. Accordingly, the 1988 advances are included in petitioners' gross income and ECPA's bad debt deduction is disallowed. We find that ECPA's rental expense deduction for FYE August 31, 1987 was proper under section 162. However, petitioners and ECPA are both liable for the negligence additions to tax under section 6653(a) for all the years in issue. Furthermore, we find ECPA liable for the addition to tax under section 6651(a) for failure to timely file its FYE August 31, 1987, return. Finally, petitioners are liable for the addition to tax under section 6661(a) for substantial understatement of their 1988 income tax liability. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 4,602.↩
1. References to petitioners are to Eduardo and Marta Cepeda. References to petitioner in the singular are to Eduardo Cepeda. References to ECPA are to petitioner Eduardo Cepeda, M.D., P.A.↩
2. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. In addition to petitioner, the board of directors included: Dr. Thomas Cunningham, Jr., Dr. Alfredo Longoria, and Dr. Carlos Garcia.↩
4. See supra↩ note 3.
5. From the evidence presented, we assume that no deficiencies were determined by respondent to have occurred during FYE Dec. 31, 1987.↩
6. In the statutory notice of deficiency, respondent determined that petitioners had received constructive dividends from ECPA during tax year 1988 computed as follows: ↩
Expenses paid by ECPA
$ 95,101 Less: Partnership withdrawals
deposits to corporate account
( 3,678)
Total constructive dividend
$ 91,423 7. We assume that respondent did not assess a deficiency to petitioner as to this amount in tax year 1987.↩
8. Respondent amended her answer to plead, in the alternative, that petitioners received unreported employee compensation derived from the payment of their personal expenses and investments by ECPA. However, respondent only advanced this argument in her reply brief after petitioners argued against the existence of unreported compensation in their brief. Because no evidence was introduced in support of this issue and in accordance with our conclusion that the advances constitute constructive dividends, this issue need not be addressed.↩