EDUARDO CEPEDA AND MARTA I. CEPEDA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDUARDO CEPEDA, M.D., P.A., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cepeda v. Commissioner
Docket Nos. 298-92, 299-92
United States Tax Court
T.C. Memo 1994-62; 1994 Tax Ct. Memo LEXIS 63; 67 T.C.M. (CCH) 2181; February 17, 1994, Filed Cepeda v. Commissioner, T.C. Memo 1993-477, 1993 Tax Ct. Memo LEXIS 488 (T.C., 1993)
*63 An appropriate order will be issued denying petitioners' motion for reconsideration without further trial. P was the president and sole shareholder in C, a professional association. C advanced funds to or on behalf of P for his personal expenses and investments. In 1987, P filed for bankruptcy. In 1988, C advanced $ 95,101 in payments to or on behalf of P, including payments to the bankruptcy trustee to repurchase C's stock from the bankruptcy estate. In all instances, P made decisions as C's sole shareholder, despite the fact that the bankruptcy trustee held legal title to the stock. In Cepeda v. Commissioner, T.C. Memo. 1993-477, we held these advances to be constructive dividends, not loans. P filed a motion for reconsideration, claiming that he could not receive dividends since the bankruptcy estate was the legal owner of the stock. Held, P retained beneficial ownership of C's stock and thus could receive constructive dividends. For petitioners: John Edward Leeper
For respondent: Derek B. Matta
PARR
PARR
This opinion supplements our memorandum findings of fact and opinion in T.C. Memo. 1993-477. SUPPLEMENTAL MEMORANDUM *64 FINDINGS OF FACT AND OPINION PARR, Judge: This case is presently before the Court on petitioners' motion for reconsideration without further trial pursuant to Rule 161, [1] filed on November 15, 1993. In their motion, Eduardo and Marta Cepeda (hereinafter petitioners) submit that since they were not the legal owners of the stock while they were in bankruptcy, the $ 91,423 in funds advanced to them by Eduardo Cepeda, M.D., P.A. (hereinafter ECPA) during 1988 could not have been constructive dividends, as held by this Court in Cepeda v. Commissioner, T.C. Memo. 1993-477. Respondent did not file a formal objection to this motion but did advance contrary arguments in the briefs submitted for our prior decision.
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation *65 of facts, together with the attached exhibits, is incorporated herein by this reference. At the time they filed their petition, petitioners resided as husband and wife in El Paso, Texas. ECPA's principal place of business was in the State of Texas. References to petitioner in the singular are to Eduardo Cepeda. We have previously addressed the constructive dividend issue as it relates to petitioners and to ECPA in Cepeda v. Commissioner, supra. We have adopted the facts and holdings of the prior opinion that are relevant and necessary to the disposition of the matter at hand. These adopted facts are incorporated herein by this reference. After attending medical school in Mexico, Eduardo Cepeda completed his residency in Pittsburgh, Pennsylvania, and his fellowship in pulmonary medicine in Cleveland, Ohio. Petitioner subsequently created and organized ECPA as a professional association in the State of Texas on August 26, 1980. Petitioner was the sole shareholder and president of ECPA. Prior to January 1, 1988, ECPA advanced $ 161,479 to or on behalf of petitioner for the payment of his personal expenses and investments. Petitioner made *66 the decision to have the corporation advance the funds as ECPA's sole representative. ECPA maintained a "due from stockholders account" reflecting advances by the corporation for petitioner's personal expenses and investments. ECPA passed no corporate resolution authorizing the advances made to petitioners. Similarly, petitioners did not execute a loan or note or provide security or collateral in exchange for such advances. In addition, no documents were presented that contained a schedule of repayment or the rate of interest to be charged on the above advances. On November 23, 1987, petitioners voluntarily filed bankruptcy under chapter 7 of the United States Bankruptcy Code. Petitioners filed a Statement of Financial Affairs for Debtor Engaged in Business on January 25, 1988, listing ECPA as an unsecured creditor. On February 29, 1988, the United States Bankruptcy Court for the Western District of Texas discharged petitioners from all dischargeable debts. On January 1, 1988, ECPA wrote off the stockholder account balance in the amount of $ 161,479 as a bad debt deduction. ECPA made no efforts to collect on the debt owed by petitioners. Despite the bankruptcy, during 1988, *67 ECPA advanced $ 95,101 in issued, $ 43,461 was made in payments to the bankruptcy trustee on petitioner's behalf to repurchase ECPA's stock from the bankruptcy estate. The bankruptcy court authorized the sale of the stock to petitioner on October 21, 1988. The first payment from ECPA to the bankruptcy trustee was on May 2, 1988, in the amount of $ 25,000. ECPA made six additional payments of $ 3,000 each to the trustee from May 27, 1988, to November 5, 1988, not including an unidentified payment of $ 461.43. The remaining $ 51,640 was made in payments to various insurance companies, the Internal Revenue Service, and a car dealership, on behalf of petitioner. As before, no notes were signed and no collateral was provided by petitioner as security in exchange for ECPA's advances. Furthermore, ECPA did not pass any corporate resolutions authorizing the advance of funds. As with the pre-1988 advances, ECPA's decision to make the advances was petitioner's sole decision. [2]
*68 Petitioners did not present any checks from their personal account which reflected repayment to ECPA during 1988. However, during 1988, 1989, and 1990, petitioner deposited distribution checks from his investment in El Paso Health Care Systems into the corporate account of ECPA in the amounts or $ 3,678, $ 9,731, and $ 10,199, respectively. During 1988, petitioner received compensation from ECPA in the amount of $ 125,444. ECPA did not declare or pay any dividends. ECPA's unappropriated retained earnings for FYE December 31, 1988, were $ 103,254. On October 8, 1991, respondent issued a notice of deficiency to petitioners for tax year 1988, [3] determining that they had received corporate distributions in the form of dividends from ECPA in the amount of $ 91,423 [4] during 1988. *69 In Cepeda v. Commissioner, T.C. Memo. 1993-477, filed on October 18, 1993, this Court found that advances made by ECPA to petitioners during tax year 1988 were constructive dividends and not loans. Accordingly, the 1988 advances were held to be included in petitioners' gross income, and ECPA's bad debt deduction was disallowed. In addition, we found both ECPA and petitioners liable for the negligence addition to tax under section 6653(a). Finally, petitioners were found liable under section 6661(a) for substantial understatement of their 1988 income tax liability. On November 15, 1993, petitioners and ECPA filed a motion for reconsideration. [5]
OPINION Petitioners contend that we fundamentally erred in our determination because the bankruptcy estate, not petitioners, owned the stock from January 1, 1988, to *70 October 21, 1988, the period during which ECPA made some of the advances. Because they were not stockholders, petitioners contend that the advances cannot be classified as constructive dividends. See sec. 301; sec. 1.301-1(c), Income Tax Regs.[6]
Respondent acknowledges that the stock was owned by the bankruptcy estate from the filing of the bankruptcy petition on November 23, 1987, until the sale date of October 21, 1988, pursuant to section 541 of the Bankruptcy Code. [7] However, respondent espouses a substance over form argument, contending that petitioners remained the true owners of the ECPA stock at all times because they continued to retain the *71 benefits of stock ownership during the bankruptcy. Petitioners bear the burden of proving that the advances did not constitute dividend income because they did not receive them "with respect to" their stock. Rule 142(a). To resolve this dispute, we will address the issue in two separate but related contexts -- beneficial ownership and substance over form. Beneficial Ownership
The concept of beneficial ownership has been frequently used by this Court to ascertain when a sale of stock has occurred and thus determine which party is to be charged with receipt of dividend income. For purposes of Federal income taxation, a sale of stock depends *72 upon transferring sufficient incidents of beneficial ownership rather than upon technical requirements for the passage of title under State law. See Maher v. Commissioner, 55 T.C. 441, 451-452 (1970), supplemented by 56 T.C. 763 (1971), affd. in part and remanded in part 469 F.2d 225 (8th Cir. 1972). As to inclusion of dividends in income, courts have consistently held that record ownership of stock, standing alone, is not determinative in answering the question as to who is required to include any dividends attributable to such stock in gross income. Rather, beneficial ownership is the controlling factor. Walker v. Commissioner, 544 F.2d 419 (9th Cir. 1976), revg. T.C. Memo. 1972-223; Ragghianti v. Commissioner, 71 T.C. 346, 349 (1978) (citing Hoffman v. Commissioner, 47 T.C. 218, 233 (1966), affd. 391 F.2d 930 (5th Cir. 1968)), affd. without published opinion 652 F.2d 65 (9th Cir. 1981); Willie v. Commissioner, T.C. Memo. 1991-182. *73 Accordingly, a court must consider not only when the bare legal title passed but also when the benefits and burdens of the property, or the incidents of ownership, were acquired or disposed of. Therefore, courts look to which party has the greatest number of attributes of ownership, relying on the objective evidence provided by the parties' overt acts. Ragghianti v. Commissioner, supra at 349-350 (quoting Pacific Coast Music Jobbers, Inc. v. Commissioner, 55 T.C. 866, 874 (1971), affd. 457 F.2d 1165 (5th Cir. 1972)). Transfer of legal title upon the sale of stock is analogous to transfer of legal title during bankruptcy, for dividend purposes, and the same factors are relevant in an analysis of beneficial ownership. In both instances, while the legal ownership or title may have passed, the actual benefits or control associated with stock ownership can still remain with the original owner or transferor. Beneficial ownership is marked by command over property or enjoyment of its economic benefits. Yelencsics v. Commissioner, 74 T.C. 1513, 1527 (1980) (citing *74 Anderson v. Commissioner, 164 F.2d 870, 873 (7th Cir. 1947), affg. 5 T.C. 443 (1945)). In Yelencsics v. Commissioner, supra at 1532, the taxpayers' total control over the corporation and use of corporate funds to satisfy their debts -- a stock purchase -- resulted in constructive dividends, even though they did not hold legal title to the stock at the time of the advances. An economic benefit need not increase the recipient's net worth; relief from a personal obligation constitutes a substantial benefit. Sullivan v. United States, 363 F.2d 724, 728-729 (8th Cir. 1966); see also Smith v. Commissioner, 70 T.C. 651, 658 (1978) (to the extent of available earnings and profits, constructive dividends result when a corporation pays an obligation of its shareholder or makes a payment for his benefit); Sachs v. Commissioner, 32 T.C. 815, 820 (1959) (citing Wall v. United States, 164 F.2d 462 (4th Cir. 1947)), affd. 277 F.2d 879, 882 (8th Cir. 1960). *75 That the formalities of a dividend are lacking or that the distribution is not recorded on the corporate books, as such, is of no consequence. Yelencsics v. Commissioner, supra; Sachs v. Commissioner, supra.
In the case at hand, beneficial ownership of ECPA stock by petitioner can be found from both control over the property and irrefutable economic benefit. In regard to control, despite the fact that petitioner's ownership interest in the corporation was legally and technically transferred to the bankruptcy estate, petitioner was still able to cause the corporation to advance corporate funds both to himself and to the bankruptcy trustee on his behalf (to repurchase the ECPA stock). As to benefit, petitioner clearly incurred substantial economic benefit by compelling ECPA to pay for the stock repurchase, insurance premiums, and various other expenses. Furthermore, objective evidence of petitioner's overt acts leads to the conclusion of continuing ownership and control. The advances to petitioner by ECPA were still recorded in the corporate books under the account, "due from stockholders". When arguing that *76 the advances constituted loans, petitioner never asserted he received such advances as an employee of the corporation; he consistently argued he received them in his capacity as the sole shareholder. Although legal title to ECPA's stock had passed to the bankruptcy trustee, petitioner was still able to cause the corporation to advance the funds on his behalf. The lack of any corporate formalities -- board resolution, signed note, etc. -- only affirms petitioner's total control and the ease with which he was able to transfer funds between himself and his business entity. Finally, petitioner stated that the decision to advance funds was made in the "best interests of the corporation", despite the fact the corporation knew it was advancing money on behalf of a bankrupt individual. Consequently, we conclude that in order to be charged with receipt of constructive dividends, beneficial ownership, as established through control over the property or continuing enjoyment of its economic benefits, will suffice. Accordingly, we find that petitioners have failed to meet their burden of proving that they did not receive the advances "with respect to" their stock, which is a necessary element *77 of constructive dividends. Therefore, we find that petitioners had beneficial ownership of ECPA's stock while in bankruptcy and thus received constructive dividends in their capacity as stockholders. Substance Over Form
Respondent contends that the actions of petitioners make it appropriate to determine, as a matter of substance, that petitioners were the true owners of the ECPA stock and that the corporate distributions were taxable dividends. It is well established that the economic substance of a transaction, rather than its form, controls for Federal tax purposes. Commissioner v. Court Holding Co., 324 U.S. 331 (1945); Gregory v. Helvering, 293 U.S. 465 (1935); Estate of Durkin v. Commissioner, 99 T.C. 561 (1992). This substance over form principle has been called the "cornerstone of sound taxation". Weinert's Estate v. Commissioner, 294 F.2d 750, 755 (5th Cir. 1961), revg. and remanding 31 T.C. 918 (1959). In Frank Lyon Co. v. United States, 435 U.S. 561, 572 (1978), the Supreme Court *78 summarized this principle by stating: "This Court, almost 50 years ago, observed that 'taxation is not so much concerned with refinements of title as it is with actual command over the property taxed -- the actual benefit for which the tax is paid'", quoting Corliss v. Bowers, 281 U.S. 376, 378 (1930). In several cases, the Supreme Court has refused to permit the transfer of formal legal title to shift the incidence of taxation attributable to ownership of property where the transferor continues to retain significant control over the property transferred. See, e.g., Commissioner v. Sunnen, 333 U.S. 591 (1948); Helvering v. Clifford, 309 U.S. 331 (1940). In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. Frank Lyon Co. v. United States, supra at 573. A similar analysis of control and command over property as that which determines economic benefit is present in a substance over form determination. We have found that petitioner *79 retained and exerted total control over the corporation, even during bankruptcy, resulting in petitioners' repurchase of the ECPA stock and the payments of significant amounts of personal expenses by the corporation. Therefore, although in form the legal ownership of the ECPA stock had passed to the bankruptcy estate, the substantive reality was that petitioner continued to benefit and exert total control over the ECPA stock. Accordingly, under either theory of beneficial ownership or substance over form, petitioners retained the benefits of ownership and thus the advances they received from ECPA are taxable as constructive dividends. [8]
To reflect the foregoing, An appropriate order will be issued denying petitioners' motion for reconsideration without further trial. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Despite the fact that the bankruptcy trustee began receiving payments as to the ECPA stock sale as early as May 2, 1988, no evidence in the record discloses the trustee's involvement, as the sole legal owner of the stock, in ECPA's decision to make the advances.↩
3. Respondent also issued a notice of deficiency to ECPA for FYE Aug. 31, 1987, and Dec. 31, 1988. The issues as to ECPA were addressed in Cepeda v. Commissioner, T.C. Memo. 1993-477↩.
4. In the statutory notice of deficiency, respondent determined that petitioners had received constructive dividends from ECPA during tax year 1988 computed as follows: ↩
Expenses paid by ECPA
$ 95,101 Less: Partnership withdrawals
deposits to corporate account
( 3,678)
Total constructive dividend
91,423 5. Although ECPA joined petitioners in their objection to our prior holding, ECPA did not submit any separate argument to refute our disallowance of its bad debt deduction.↩
6. Sec. 301 provides that in order to be in receipt of taxable dividend income, there must be a distribution of property from a corporation to a shareholder with respect to its stock. Sec. 301 is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such. Sec. 1.301-1(c), Income Tax Regs.↩
7. Under the Bankruptcy Code, 11 U.S.C. sec. 541 (1988)↩, the commencement of a case under ch. 7 creates an estate comprised of all legal or equitable interests of the debtor (petitioner) in property as of the filing of the petition. The bankruptcy estate possesses legal ownership of the property until it is sold or otherwise disposed of.
8. Even if we concluded that petitioner was not a shareholder under either espoused theory, the advances were, nevertheless, an accession to petitioner's wealth and, thus, would be income under the general principles of sec. 61.↩